Kent Salveson  SBN 101311
2549 East Bluff Dr.-B; #459
Newport Beach, CA 92660

Telephone:    (949) 291-7393
Facsimile:     (949) 706-9020
Email: Kent1199@Gmail.com

Attorney for: Secured Creditor Dr. Charbel Maksoud

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>MOSES SEEDORF SAID<br><br>Debtor. | **Case No.  8:15-BK-15241-CB**<br><br>**Chapter  7**<br><br>**Adversary Proceeding:**<br><br>**COMPLAINT TO DETERMINE (1) NON-DISCHARGEABILITY OF DEBT AND OBJECTION TO DISCHARGE OF DEBTOR PURSUANT TO BANKRUPTCY CODE SECTIONS 523 AND 727; AND (2) TO DETERMINE AVOIDANCE OF FRAUDULENT CONVEYANCE OF ESTATE PROPERTY**<br><br>**Hearing Date:**<br><br>(hearing date to be set by summons)<br><br>Date:         _____ 2016<br>Time:<br>Place:  411 West Fourth Street<br>            Courtroom 5 C<br>            Santa Ana, CA. |
| Charbel Maksoud<br><br>Plaintiff<br><br>v.<br><br>Moses Seedorf Said; Charles Lee Williams; Abbey Said; and Abigail Sinowertski<br><br>Defendant | |

Complaint Objecting to Discharge of Debtor

1

2 **COMPLAINT FOR DETERMINATION OF DISCHARGE ABILITY AND OBJECTION**

3 **TO DEBTOR'S DISCHARGE PURSUANT TO BANKRUPTCY CODE §523 AND §727**

4

5      Charbel Maksoud, Plaintiff and Creditor, brings this complaint for determination

6 of dischargeability and objection to discharge pursuant to Bankruptcy Code 523 and

7 727 against Moses Seedorf Said (AKA: *Mohamed Hussein Sayed Mohamed Said* as

8 provided on his Egyptian Passport ), the Debtor in this bankruptcy proceeding filed on

9 October 29, 2015, and the Defendant in this complaint.   Charles Lee Williams, Abbey

10 Said (AKA - Abigail Sinowetski) are also named as Defendants in regard to the

11 fraudulent transfer of estate asset primarily in the form of cash transfers of the

12 fraudulently obtained loans.   Creditor respectfully alleges as follows:

13

14                    JURISDICTION and VENUE

15      This adversary proceeding is a core proceeding pursuant to 28 U.S.C.

16 157(b)(2)(I) and 157(b)(2)(J).

17      Defendant Debtor filed a voluntary Chapter 7 bankruptcy proceeding on

18 October 29, 2015 seeking relief in the United States Bankruptcy Court in the Central

19 District of California; case 8:15-BK-1524.

20      As of this date the Debtor Defendant has not been granted a discharge.

21      This complaint is timely because the date by which a complaint objecting to the

22 Debtor's discharge or to determine dischargeability of a debt is May 8, 2016.

23      The court has jurisdiction over the subject matter and the parties of this

24 adversary proceeding pursuant to 28 U.S.C. 1334; 11 U.S.C. 523 and 727, and

25 bankruptcy rule 7001.

Venue is proper in the Central District of California pursuant to 28 U.S.C. 1408(1) and 1409(a) as this is a proceeding arising in a case commenced by the Debtor and ifled in the Central District of California under chapter 7 of the Bankruptcy Code, Case# 8:15-BK-15241.

PRELIMINARY STATEMENT

Plaintiff brings this action pursuant to 11 U.S.C. 523(a)(2)(A), 523(a)(4) and 523(a)(6) which provide in part that:

> *"a discharge under 727…of this title does not discharge an individual debtor from any debt **(a)(2)(A)** for money…to the extent obtained by…false pretenses, false representations or actual fraud";  nor is a Debtor entitled to discharge **"(a)(4)** for…larceny, or  **(a)(6)** for the willful and malicious injury by the Debtor to another entity or to the property of another entity."*

In addition, Plaintiff brings this complaint pursuant to 11 U.S.C. 727(a)(2), (3), (4) and (5) which provides in part that:

> "*The court shall grant the debtor a discharge; **unless** (a)(2) the debtor with the intent to hinder, delay or defraud the a creditor or an officer of the estate,…has transferred, removed,…or concealed (A) property of the debtor, within 1 year… of filing…the petition; or (B) property of the estate, after the date of filing the petition; or (a)(3) the debtor has concealed or failed to keep…recorded information, including books, documents and records; …(a)(4) the debtor knowingly made a false*

*oath or account or presented a false claim…or (a)(5) the debtor has failed to explain satisfactorily…any loss of assets."*

Lastly, Plaintiff's objection is supported by Defendants acts in violation of 11 U.S.C. 548 which provides generally that:

*The trustee may avoid any transfer,…including any transfer to…an insider, of an interest in property within 2 years before the filing date of the petition, if the Debtor voluntarily (A) made the transfer with the intent to hinder, delay or defraud any entity to which the Debtor…was indebted; or (B) received less than reasonable a reasonably equivalent value in exchangen as a result of such transfer… was insolvent on the date that such transfer was made… or made such transfer to or for the benefit of an insider."*

Creditor, Charbel Maksoud, is not the Trustee in this case and unless leave is granted by the Trustee, Creditor is not able to pursue a complaint under §548. However; the definition of a fraudulent conveyance applied to the facts of this case provides the court with additional support that Defendant has violated the provisions of §548.   The Court be able to judicially recognize the acts of Defendant as violating this code section.

Plaintiff seeks judgement, inter alia, for denial of Defendant Debtor's discharge and for a determination that Defendant Debtor's debts to Plaintiff are deemed non-dischargeable pursuant to 11 U.S.C. §523; §548 and §727 as provided above.   In addition, Plaintiff seeks avoidance and recover of all fraudulent transfers between

Defendant and Defendants insiders, Charles Lee Williams and Abbey Said (Abigail Sinowetski).

## THE PARTIES

The Plaintiff is Charbel Maksoud.  Plaintiff is a creditor of the Debtor because the Plaintiff made a loan of $850,000 to the Defendant.

The Defendants are Moses Seedorf Seedorf Said ( AKA: *Mohamed Hussein Sayed Mohamed Said* as provided on his Egyptian Passport) who borrowed money from Charbel Maksoud based on false pretenses and fraud.  Charles Lee Williams is a Defendant for his action as a co-conspirator and insider to Moses Said.  Charles Lee Williams received at least $2,000,000 of cash from Moses Said without Moses Said receiving any asset in return.   Abbey Said, is the Debtor's spouse and an insider to Debtor, Moses Said (AKA: Abigail Sinowetski ) received at least $300,000 in cash or support from Moses Said during the pendency of the chapter 7 proceeding.

## FACTUAL ALLEGATIONS

1)  On March 16, 2015, the Defendant executed a note obligating Defendant and Nagwa Abuel Assad (Moses Said's mother pursuant a power of attorney held by Defendant), to pay Plaintiff, Charbel Maksoud, $1,150,000.   The due date of the note was April 30, 2015.   The actual amount funded by Plaintiff under the note was $850,000.    The note was for a very short period time, 45 days, based on the statements made by Defendant and the alleged sale of non-existent real property.

2)  The note provided for the Defendant to provide collateral to Plaintiff in the form of various personal and real property.  A UCC 1 was filed securing real and personal property under the note.

3)  <u>PERSONAL PROPERTY</u>:  The note specifically required Defendant to provide Plaintiff personal property collateral as provided in the UCC 1 filed with the State of California, filing number #15-7455634696 as follows:

a.  a 5.74 carat diamond ring appraised at $155,000

b.  a men's platinum Rolex watch appraised at $52,000

c.  a 2014 Rolls Royce Ghost valued at $240,000

d.  a Range Rover HSE valued at $90,000

e.  a lien on funds or receipts of Fortis Property Management

f.   investment property, and lease rights


4)  Defendant failed to deliver any of the collateral listed above.

5)  <u>Diamond Ring</u>:  Defendant claimed that he had lost the 5.74 Carat diamond ring.  However, witness have seen Abbey Said wearing the ring and it is believed to still be in her possession.

6)  <u>Rolex Watch</u>:  Defendant testified at the first 341 hearing that he had the Rolex watch shortly after offering it as collateral for the loan.   The Defendant has provided no proof of the sale to any party and Defendant claims that he does not know what happened to the money from the sale.  None of the sale proceeds for the watch were paid to Plaintiff.

7)  <u>Rolls Royce</u>: Defendant claimed that he owned the Rolls Royce Ghost free and clear of all liens and encumbrances when he offered it as collateral for the loan.  In fact the Rolls Royce was leased and was repossessed.

8)  <u>Land Rover</u>:   The Land Rover was the car driven by Abbey Said.  This car has never been accounted for by the Defendant. It was alleged to be owned free and clear

and is reported as such in the Defendant's bankruptcy petition.   It is believed that Abbey Said is in possession of the car.

9) <u>Fortis Properties</u>:   This was a company which Defendant used as part of his fraud.  The company was one of several companies that Moses Said used as his alter ego.  When Plaintiff first met Defendant, Defendant claimed that Fortis was about to close on a large real estate project that would make a large profit.    The proceeds profits that would be payable to Fortis as a result of its purchase would be used to repay the loan made by Plaintiff to Defendant (exhibit 2).    In fact, the Plaintiff has determined that the alleged purchase of the real property was a complete sham.  The Seller of the property was Rabobank.   Rabobank has stated to Plaintiff that it had never entered into an offer to sell the subject property and has no knowledge of Defendant.

10) <u>Option to Purchase 11 Sarteano</u>:   Defendant also told Plaintiff that he had an option to purchase the property located at 11 Sarteano, Newport Beach, CA. and that the option to purchase the property was included in the collateral.  Defendant claimed that the option had a value of $1,100,000 in that the option price was for only $2,000,000 and the property was valued at $3,100,000.    In fact, Defendant was merely a lessee of the property and did not have any option or equity interest in the property he was leasing.

11) <u>REAL PROPERTY</u>:   The note also provided that real property owned by Debtor was to be collateral subject to the lien and claim of Plaintiff.   The property was additional collateral to secure the repayment of the loan.   Debtor owns the property located at 26 Mohamed Mazhar Street; Unit 31, Zemalek, Cairo, Egypt.   This property is estimated to be valued at $3,000,000 US.  The property is owned free and clear of

any lien or encumbrance.   The Plaintiff's note specifically states that the remedy available to Plaintiff upon "*default, (is that) a foreclosure decree shall be immediately entered, without further notice, in favor of Plaintiff and against each borrower, adjuding that each borrower's rights, claims, and oewnership in the property located at 26 Mohamed Mazar Street, Unit 31, Cairo Egpyt…are extinguished and that the lender shall inure to such rights.*"

12) Defendant now claims that Nagwa Abuel Assad, his mother, owns the property. However, official recorded documents from the Egyptian government show that Defendant owns the subject property.  Defendant has failed to disclose his interest in the Cairo property to the United States Trustee.

13) The loan made to Defendant was based on fraud, false pretense and fraudulent conveyance.   The Defendant has obtained millions of dollars in other fraudulent loans from other victims based on his statements of false pretenses and fraud.  The chart on the following page illustrates the time line and loan fraud victims of Defendant.  The total amount of fraudulent debt incurred by Defendant from 8 separate person or entities is nearly $4,400,000 in one year.

14) In this case, as with other victims, Defendant told Plaintiff that somebody was trying to kill him, and he needed money to pay-off his alleged killer.  *This is the same statement Defendant told the U.S. Trustee when Defendant refused to give the Trustee his current physical address.   Yet despite being pursued by an assassin, Defendant continues his high profile and luxurious life driving his Land Rover*.  During the last 18 months of claiming a threat to his life Defendant has never reported any threat or act of violence to the police or any other law enforcement agency.

15) In addition, the Defendant told Plaintiff that he needed the money for a short period of time so that Defendant could close a highly profitable real estate transaction,

## Moses Said:  Receipt of Funds from Victims - Chart of Accounts

| | | 2014 October | 2014 November | 2014 December | 2015 January | 2015 February | 2015 March | 2015 April | 2015 May | 2015 June | 2015 July | 2015 August | 2015 September | 2015 October | 2015 December | 2016 January | 2016 February | Total All Known Loans |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dr. Ghada Affifi | cash | $ 40,000 | $ 50,000 | | | | | | | | | | | | | | | $ 90,000 |
| Dr. Richard Wilder | cash | | | | $ 250,000 | $ 50,000 | $ 760,000 | $ 535,450 | | | | | | | | $ 936,000 | | $ 2,531,450 |
| Dr. Richard Wilder | rent | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 121,600 |
| Dr. Richard Wilder | furniture | | | | | | | | | | | | | | | $ 100,000 | | $ 100,000 |
| Dr. Charbel Maksoud | cash | | | | | | $ 420,000 | $ 265,000 | | | | | | | | | | $ 685,000 |
| Marc Lazo | cash | | | | | | | $ 210,000 | | | | | | | | | | $ 210,000 |
| Marc Lazo | cash | | | | | | | $ 50,000 | | | | | | | | | | $ 50,000 |
| Jagues Huttani | cash | | | | | | | $ 50,000 | | | | | | | | | | $ 50,000 |
| Nassem Fazad | Cash | | | $ 10,000 | | | | | | | | | | | | | | $ 10,000 |
| American Express | Credit | $ 75,000 | $ 75,000 | $ 75,000 | $ 75,000 | | | | | | | | | | | | | $ 300,000 |
| Debts owed to VCC contractors | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | $ 4,148,050 |
| Total | | $122,600 | $132,600 | $ 92,600 | 332,600 | $57,600 | $1,187,600 | $1,118,050 | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 7,600 | $ 1,043,600 | $ 7,600 | $ 4,148,050 |

## Moses Said: Activities, Transfers, Money Movement

| | 2014 October | 2014 November | 2014 December | 2015 January | 2015 February | 2015 March | 2015 April | 2015 May | 2015 June | 2015 July | 2015 August | 2015 September | 2015 October | 2015 December | 2016 January | 2016 February |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|



Fired from VCC
Stops Paying Rent of $7,600
Engages in Loan Fraud Scam
Cook Island Trust Formation
Wires Money: Charles Lee Williams
File Bankruptcy
Car Repossessed
Sells Rolex Watches
American Express Credit Card
Opens Chase Bank Account
Fortiss Bank Account Open
Closes BOA Account - 8080

the profit proceeds of which would be used to pay back Plaintiff (exhibit 2).   In fact the real estate transaction was a complete sham, fiction, and fraud in that the Defendant did not have any property in escrow and did not have any interest in any other real property from which he could earn a profit.   Defendant does not have any document that would establish that he actually entered into a real property transaction.   Aside from a fraudulently created purchase and sale agreement, there are no title reports, no appraisals, no escrow instructions, no property leases, no hazardous substance reports, no soils or engineering reports – not one document.

16) Plaintiff, unaware of the fraud being perpetrated against him and having relied on the statement of Defendant, was sympathetic to Defendant's apparent desperation and his continuous appeals for help.   Plaintiff made an initial loan to Defendant in the amount of $850,000 subject to a second tranche of funding for another $300,000.   The second tranche of funding never occurred because of Defendant's early default.

17) Defendant never made a single payment or offer of payment to Plaintiff.   Nor did Plaintiff offer to explain where the money went or how it was invested.   In fact, Defendant has never made a single payment to the other 8 loan fraud victims because Defendant at no time had any intention to pay back any of the loans that were made to him based on the false pretenses and fraudulent statements of Defendant.

18) In fact, bank records show that Defendant received large deposits into his Bank of America bank account ending in 0808.   After each loan deposit was made, Defendant would withdraw large amounts of cash from the account with no record as to where or to whom the money had been disbursed.

19) Defendant stated in his first 341 hearing that he did not have any contact information for the person to whom he gave the money.   Upon further examination Defendant stated that he gave the fraudulently obtained loan funds to a Charles Lee

who was going to invest the money for Moses Said.  This statement contradicts exhibit 2 which shows that Moses Said is making the investment directly.

20) In fact, Defendant knew that the "Charles Lee" was actually ***Charles Lee Williams*** who was living in Irvine California at the time of the fraudulent loans and is not residing in Smyrna, Georgia.  In fact, Defendant completed his last fraudulent loan $936,000 in January 2016, just 60 days after Defendant filed the instant chapter 7 proceeding and appeared at his first 341 hearing.  The $936,000 was another fraudulently induced loan made by Dr. Richard Wilder, Defendant's landlord at 11 Sarteano.  Defendant coordinated the deposit of the funds directly with Charles Lee Williams into the Wells Fargo Bank account of Charles Lee Williams.   At the direction of Defendant, Dr. Richard Wilder MD, a most naive man, refinanced his home at 11 Sarteano by allowing Moses Said to handle the refinancing and when the loan funded Dr. Richard Wilder received a check in the amount of $936,000.  Defendant told Dr. Richard Wilder to meet with Charles Lee Williams so that Charles Lee Williams could deposit the check into his checking account and then allegedly wire the money to Moses Said.  Consequently, it is clear that Moses Said lied during his 341 hearing that he did not know the name of the person to whom he had made investments with and that he did not know how to contact the person receiving the loan funds.  Defendant has concealed the location of the cash from the Plaintiff and the Trustee; and has concealed the identity of the person who received the fraudulently transferred cash.

21) Defendant has wired at least $2,000,000 of funds to Charles Lee Williams, who is a co-conspirator and insider.  Defendant has also given his spouse, Abbey Said, (Abigail Sinowetski) approximately $300,000 of cash in addition to jewelry and cars. Abbey Said was contacted by the Newport Beach Police pursuant to a theft report filed

with the police.  She refused to provide her current address and refused to cooperate with the police in an investigation of the receipt and disbursement of funds to her.

### First Cause of Action

11 USC 727(a)(2)

Plaintiff's Objection to Discharge of Debtor

Plaintiffs incorporate the allegations of paragraphs 1 through 21 by reference. Pursuant to 11 USC 727(a)(2), the Debtor Defendant is not entitled to discharge based on his actions in intentionally transferring or concealing assets within one year before filing his voluntary petition in an effort to hinder, delay or defraud Plaintiff.

Defendants has concealed the identity of his co-conspirators and insiders; and has concealed the location of $4,400,000 of cash, cars valued at $90,000, jewelry valued at $207,000, and real property valued at $3,000,000.

### Second Cause of Action

11 USC 727(a)(3)

Plaintiff's Objection to Discharge of Debtor

Pursuant to 11 USC 727(a)(3), the Debtor Defendant is not entitled to discharge of debt because Defendant's conduct and actions demonstrate that Defendant obtained all of the loans through fraud and false pretense.  Defendant has kept no record of any of his alleged investment transactions.   Defendant never had any intent to repay any of the funds that he borrowed.  Defendant provided false and forged purchase agreements for the purchase of real property in which he had no interest or expectation of ownership or profits as an inducement to Plaintiff to make

the loan.    As such, the loans were not loans at all.    The moneys obtained by
Defendant were nothing more than a con-man making a score on an innocent party.

## Third  Cause of Action

11 USC 727(a)(4)

Plaintiff's Objection to Discharge of Debtor

Pursuant to 11 USC 727(a)(4)(A), the Debtor Defendant is not entitled to
discharge if the debtor made a false statement or oath or account in connection with
the case.  Debtor made numerous false statements, provided forged and fraudulent
documents, and mislead Plaintiff in regard to accounts, assets that were concealed, or
fraudulently transferred to other.

## Fourth Cause of Action

11 USC 727(a)(5)

Plaintiff's Objection to Discharge of Debtor

Pursuant to 11 USC 727(a)(5), the Debtor Defendant is not entitled to
discharge if the debtor failed to satisfactorily explain the loss of the assets.    In this
case, the debtor has refused, lied or evaded answering questions regarding the loss
or disbursement of assets by fraudulently transferring the assets to Charles Lee
Williams and Abbey Said.

## Fifth Cause of Action

11 USC 523(a)(2)(A)

Plaintiff's Objection to Discharge of Debtor

Pursuant to 11 USC 523(a)(2)(A) the Debtor is not entitled to discharge if the debtor incurred a debt for money by false pretenses, false representation, or actual fraud.  Debtor used false pretenses and fraud by lying about the need for the loan, promising re-payment when in fact there was no intent to re-pay the loan and by providing forge real property purchase agreements to support his ability to re-pay the loan.

## Sixth Cause of Action

11 USC 523(a)(6)

Plaintiff's Objection to Discharge of Debtor

Pursuant to 11 USC 523(a)(6) the Debtor is not entitled to discharge if the debtor engaged in willful and malicious conduct which results in injury to the Plaintiff. In this case, the Debtor acted willfully and maliciously by promising to make a loan which debtor knew it would not repay and in fact could never repay because none of the funds were being used for the purpose of making an investment.   In fact, Defendant simply pocketed the money and never made a single payment to any creditor including Plaintiff.

*///*

## Seventh Cause of Action

11 USC 548

Plaintiff's Objection to Discharge of Debtor

Complaint Objecting to Discharge of Debtor

Pursuant to 11 USC 548 a fraudulent transfer occurs when the Debtor transfers estate property of value to a third person and does not receive property of equivalent property in return.    In this case, the Debtor has transferred at least $2,000,000 to Charles Lee Williams and has received nothing in exchange.  In addition, the Debtor has transferred at least $300,000 to Abbey Said and has received nothing of value.  These transactions are fraudulent conveyances because nothing was obtained by the bankruptcy estate in return for the value conveyed.  The transfers must be set aside and all funds must be repaid to the bankruptcy estate.

## RELIEF REQUESTED

Wherefore Plaintiff respectfully requests that this court assume jurisdiction in this entire matter and enter judgment in favor of Plaintiff as follows:

1)  For a judgment and ordering denying Defendant Debtor a discharge pursuant to 11 USC 727(a)(2); (a)(3); (a)(4)(A) and (B); and (a)(5).

2) For a judgment and order determining that the debts owed by the Defendant Debtor to Plaintiff in an amount according to proof, are not dischargeable pursuant to 11 USC 523(a)(2)(A); and 523(a)(6).

3) For judgment and order determining that the conveyance of cash funds and real and personal property were fraudulent conveyances under 11 USC 548 and that the all property must be returned to the bankruptcy estate.

4) For costs and attorneys fees incurred herein, and

5) For any other relief that is just and proper.


///


Complaint Objecting to Discharge of Debtor

1

2      Respectfully submitted on May 8, 2016

3

4      /S/     Kent Salveson

5      Attorney for Creditor Charbel Maksoud

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# Exhibit 1

# Plaintiff's Note and UCC 1

# SECURED PROMISSORY NOTE AND STIPULATION TO JUDGMENT IN EVENT OF DEFAULT

| Original Principal | *New* Principal | Maturity Date |
|---|---|---|
| $850,000 | *$1,150,000* | *4/30/15* |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:**  Moses Said
Abbey Said
Nagwa Abuelassad

**Lender:**  Dr. Charbel Maksoud
3400 Dogwood Circle
Loma Linda, MO 64804

## Principal Amount: $1,150,000.00

**PROMISE TO PAY.** For value received, Moses Said, Abbey Said, Nagwa Mohamed Ali Abuelassad and any and all companies, trusts, estates and/or assets in which any Borrower owns a beneficial, equitable or any other interest (individually and collectively, "Borrower") each, jointly and severally, promises to pay to Dr. Charbel Maksoud ("Lender"), in lawful money of the United States of America, the principal amount of One-Million One-Hundred and Fifty Thousand & 00/100 Dollars ($1,150,000.00) no later than April 30, 2015.

**PAYMENT.** This payment, due on April 30, 2015, will be for all principal only provided payment in full is timely made. Each Borrower jointly and severally promises to pay to Lender the entire Principal no later than April 30, 2015. All payments hereunder shall be made in lawful money of the United States of America. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. *Each Borrower and Lender agrees that this Secured Promissory Note and Stipulation to Judgment in Event of Default shall in all respects supersede and replace the prior Secured Promissory Note dated March 16, 2015,* but shall not in any way compromise Lender's right to foreclose on any of the collateral described in the UCC Financing Statement recorded on or about March 20, 2015, which collateral also secures this Agreement. It is understood that there are no oral or written agreements or representations between the parties hereto affecting this Agreement. This Agreement supersedes and cancels any and all negotiations, arrangements, representations, agreements and understandings, if any, between the parties hereto, and none thereof shall be used to interpret or construe this Agreement. If any provision of this Agreement, or any documents executed in connection herewith, is found to be illegal, invalid, or unenforceable under present or future laws in effect during the term of this Agreement, this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision never comprised a part of it, and the remaining provisions shall remain in full force and effect.

**INTEREST RATE.** Provided payment is timely made, interest shall not accrue. Otherwise, interest on the outstanding portion of Principal of this Note shall accrue at a rate of eight percent (8%) per annum, in addition to the other events of Default described below being triggered. All computations of interest shall be made on the basis of a 365-day year for actual days elapsed. Such interest shall be paid in arrears on the last business day of each successive one year anniversary of the date of this Note

**PRE-PAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note, which shall entitle Lender to require each Borrower to take any and all action necessary to make any and all collateral available to Lender:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Security Interest Default.** Failure of Lender's security interest granted pursuant to this Agreement to be a first lien priority perfected security interest on all of the Collateral.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any

environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.    Should any Borrowers choose to avail themselves of any applicable Federal and/or State Bankruptcy protection prior to satisfying their payment obligations in full as set forth herein, Lender shall be entitled to recover the amount of outstanding balance owed, plus applicable interest, by virtue of an automatic right of attachment and first lien on all identifiable and tangible asset owned by Defendants, including but not limited to any and all Collateral generally and specifically identified herein.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in any Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired, including but not limited to any Borrower's sale, assignment, gift, or other transfer of any portion of the Collateral.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within five (5) days; or (2) if the cure requires more than five (5) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS OF JUDGMENT AND FORECLOSURE IN EVENT OF DEFAULT.**  Upon Default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due.

**Rights of Judgment.**  Moreover, in any Event of Default described above, each Borrower hereby agrees to an immediate and irrevocable Judgment i$1,150,000.00 plus applicable interest, jointly and severally, of which this Agreement shall serve as full and final evidence. In such case, this Agreement shall serve as an enforceable Judgment without the necessity of notice or presentment to any Borrower. Each Borrower hereby consents to this form Agreement serving as a Judgment, such that no Borrower shall have any right to make objection or cause any delay in the execution or enforcement of same. Further, in an Event of Default, each Borrower waives any Findings of Fact and Conclusions of Law which would otherwise be required to be made. Each Borrower also waives their rights to appeal, including but not limited to an appeal of the amount of the Debt owed and a waiver of their rights to bring any motions for new trial, as well as a waiver of any and all rights they may have to set aside or overturn this Judgment.

**Rights of Foreclosure.**  In an Event of Default, a foreclosure decree shall be immediately entered without further order or further notice from any parties in favor of Lender and against each Borrower, adjudging that each Borrower's rights, claims, ownership, liens, titles and interests in the Property located at **26 Mohamed Mazhar Street #31, Zamalek, Cairo, Egypt** are hereby extinguished and that Lender shall inure to such rights, claims, ownership, liens, titles and interests in said Property. Lender shall be entitled, pursuant to this Agreement and accompanying Security Agreement, to effect an immediate sale of the Property by a duly appointed agent, and to apply the proceeds of the sale to payment of the entire indebtedness due to Lender, after deducting costs of court and expenses of the levy and sale. Each Borrower and all persons claiming under them after execution of said sale, whether as lien claimants, judgment creditors, claimants under a subordinate secured interest, purchasers, or otherwise, be barred and foreclosed from all rights, claims, trusts or equity of redemption in the Property. Further, a foreclosure decree shall be entered directing the levying officer, after the time for redemption has elapsed, to execute all required documentation to allow the purchaser to be let into and take immediate possession of the Property at the sale. Judgment shall also be entered for any monetary deficiency due Borrower upon foreclosure/sale.

Lender's rights and remedies under this Agreement shall not be cumulative. Lender shall have all other rights and remedies provided under any other applicable law, or in equity. No exercise by Lender of one right or remedy shall be deemed an election and no waiver by Lender of any Event of Default shall be deemed a continuing waiver. No delay in exercise of any remedy by Lender shall constitute a waiver, election, or acquiescence by it. Specifically, the negotiation by Lender of any check or series of checks tendered late by any Borrower shall not affect a waiver, an estoppel or an accord and satisfaction. Rather, a waiver of any term of this Agreement must be made in writing and executed by all parties and will be limited to the express written terms of the waiver. If there are any inconsistencies between the terms of this Agreement and the terms of any other writing or understanding, the terms of this Agreement will prevail.

In an Event of Default, each Borrower hereby release, discharge and acquit Lender and Lender's agents, affiliates and representatives, from any and all claims, demands, sums of money, actions, rights, causes of action, obligations, setoffs, counterclaims, affirmative defenses and liabilities of any kind or nature whatsoever which each may have, may have had or claim to have had, or now claim to have for any issue, claim or dispute whatsoever arising out of or connected with the subject matter of this Agreement. Each Borrower hereby acknowledges that such release, discharge and acquittal extends to known and unknown claims. Each Borrower hereby assumes the risk of all mistakes of fact with regard to all facts which are now unknown. All rights under California *Civil Code*, Section 1542, are hereby expressly waived. Section 1542 of the California *Civil Code* reads as follows:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time

of executing the release, which if known by him must have materially affected his settlement with the debtor."

Each Borrower understands and acknowledges the significance and consequence of such specific waiver of Section 1542 and hereby assumes full responsibility for any injuries, damages, or losses, which they individually or collectively may incur from or by reason of such waiver.

**SIGNATORIES AND GUARANTORS TO THIS AGREEMENT.** The person(s) signing this Agreement have the power and authority to do so on behalf of any organization or person they purport to represent. Each Borrower hereby specifically assigns Moses Said exclusive signatory rights to enter into this Agreement, such that notwithstanding the existence or nonexistence of any documents to the contrary, each Borrower acknowledges and affirms that Moses Said has the power and authority to bind each Borrower to each joint and several obligation imposed in this Agreement, and has full power and authority to enter into, execute and perform this Agreement, such that no consent, approval or action of any other Party or governmental agency is required to bind each Borrower to enter into, execute or perform this Agreement. The person(s) signing on behalf of the Borrower are the duly authorized representatives of such Party, with full power and authority to enter into and execute this Agreement on behalf of such Party. Borrower and Lender are aware that Moses Said is in possession of a Notarized Verification for Unlimited Power of Attorney for his mother Dr. Nagwa Abu El Assad, a Borrower, and has full and unadulterated signatory rights to bind Dr. Nagwa, as well as Abbey Said, to the terms of this Agreement. The provisions of this Agreement shall be binding upon all parties hereto, as well as their former and current respective heirs, spouses, family members, managers, partners, officers, directors, shareholders, trusts, beneficiaries, companies, as well as any persons acting by, through, under, or in concert with any of them. Each Borrower hereby acknowledges that they have had the right to seek independent counsel regarding the terms and conditions of this Agreement, and the impact of the rights, duties and obligations arising therefrom, and have acted according to their own volitions notwithstanding and in light of that advice.

**GOVERNING LAW.** This Note will be governed by the laws of the State of California. Each Borrower specifically consents to the application of California State Law notwithstanding any conflict or choice of law issues. However, Lender's legal action in California shall not preclude Lender from initiating legal action in the State of Missouri, to the extent any remedies exist in said jurisdiction that are not cumulative.

**CHOICE OF VENUE.** If there is a lawsuit initiated in California, each Borrower agree upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California, without prejudicing Lender's rights to prosecute action in the State of Missouri as to any non-cumulative remedies.

**COLLATERAL.** Each Borrower acknowledges this Note is secured by the following collateral described herein. The word "Collateral" as used in this Agreement means the following described real property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which each Borrower is giving to Lender a security interest for the payment of the indebtedness and performance of all other obligations under the Note and this Agreement:

- **All prior collateral securing the prior Secured Promissory Note dated March 16, 2015;**

- **The real property located at 26 Mohamed Mazhar Street #31, Zamalek, Cairo, Egypt; and**

- **Various items of jewelry valued at $40,000**

Borrower represents that each of the foregoing specific items of Collateral is owned free and clear without any encumbrances, and that the security interests created by this Agreement will be prior perfected security interests enforceable by the Lender. In addition, "Collateral" shall refer to all tangible and intangible assets, including but not limited to inventory, equipment, accounts, account receivables (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to promissory notes and deeds of trust), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, rents, lease rights, money, any other rights to payment and performance, and general intangibles (including but not limited to all software and all payment right intangibles); all attachments, accessories, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software; and all supporting obligations owned or controlled by, or otherwise in the possession, custody or control of Lender, including but not limited to any and all such assets owned in whole or in part, controlled or otherwise held by each Borrower, including **CONSTRUCTION MANAGEMENT CONSULTANTS COMPANY INTERNATIONAL; FORTIS PROPERTY INVESTMENT GROUP, LLC; VANDALITE CONSTRUCTION MANAGEMENT;** or any of said companies' principals, and including any and all **COLLATERAL** owned by any Said family members, including but not limited to interests in any companies owned by Hisham Hussein Said and/or Norran Hussein Said, and any and all Said family trusts, wills or other family estates, holdings, or beneficial interests, which Borrower hereby unequivocally represents Lender has the authority to bind to all terms and conditions set forth in this Note.

The repayment and collateral guarantees set forth herein also extend to any Borrower or above-mentioned individuals' or entities' affiliates, predecessors or successors, parent, subsidiary or holding entities; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing Collateral; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing Collateral; all proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process; and all records and data relating to any of the assets described in this Collateral section. "Collateral" shall further refer to all of each Borrower's interest in all accounts and general intangibles intangibles (each as defined in the Uniform Commercial Code) of each Borrower constituting a right to the payment of money, whether or not earned by performance, including all moneys due and to become due to each Borrower in repayment of any loans or advances, in payment for goods (including inventory and Equipment) sold or leased or for services rendered, in payment of tax refunds and in payment of any guarantee of any of the foregoing (collectively, the "*Accounts*"); all contract rights and general intangibles now owned or hereafter acquired, including, without limitation, all leases license agreements, franchise agreements, blueprints, drawings, purchase orders, customer lists, customer list databases and related information, route lists, infringements, claims, computer programs, computer discs, computer tapes, literature, reports, catalogs, design rights, income tax refunds, payments of insurance and rights to payment of any kind, all copyrights, copyright registrations and applications, copyright renewals or extensions, patents and patent applications, all reissues, divisions, continuations, renewals, extensions and continuations-in-part of all patents or patent applications, all trademarks, trade names, trade styles, service marks, logos, together with product lines and goodwill of the business connected with the use of, or otherwise symbolized by, each such trade name, trademark and service mark, trademark and service mark, trademark and service mark

registrations and applications for trademark and service mark registrations, all renewals and extensions of any trademarks, tradenames, trade styles, and service marks, all trade secret rights, including all rights to unpatented inventions, know-how, operating manuals, license rights an agreements and confidential information, all mask work or similar rights available for the protection of semiconductor chips, and all rights in the foregoing intellectual property to income, royalties, damages, and other payments, and all rights to sue for all past, present and future infringements, and all rights otherwise accruing under or pertaining to any of the foregoing throughout the world ("*Intellectual Property*"); instruments, chattel paper or letters of credit (each as defined in the Uniform Commercial Code) of the Borrower evidencing, representing, arising from or existing in respect of, relating to, securing or otherwise supporting the payment of, any of the Accounts (collectively, the "*Instruments*"); all inventory (as defined in the Uniform Commercial Code) and all other goods of the Borrower that are held by the Borrower for sale, lease or furnishing under a contract of service, that are so leased or furnished or that constitute raw materials, work in process or material used or consumed in its business, including all spare parts and related supplies, all goods obtained by the Borrower in exchange for any such goods, all products made or processed from any such goods and all substances, if any, commingled with or added to any such goods (collectively, the "*Inventory*"); equipment (as defined in the Uniform Commercial Code) and all other goods of the Borrower that are used or bought for use primarily in its business, including all spare parts and related supplies, all goods obtained by the Borrower in exchange for any such goods, all substances, if any, commingled with or added to such goods and all upgrades and other improvements to such goods, in each case to the extent not constituting Inventory (collectively, the "*Equipment*"); all documents of title (as defined in the Uniform Commercial Code) or other receipts of the Borrower covering, evidencing or representing Inventory or Equipment (collectively, the "*Documents*"); all contracts and other agreements of the Borrower relating to the sale or other disposition of all or any part of the Collateral and all rights, warranties, claims and benefits of the Borrower against any person arising out of, relating to or in connection with all or any part of the Collateral of the Borrower, including any such rights, warranties, claims or benefits against any person storing or transporting any Inventory or Equipment or issuing any Documents; all other accounts or general intangibles of the Borrower not constituting Accounts, including, to the extent related to all or any part of the other Collateral, all books, correspondence, credit files, records, invoices, tapes, cards, computer runs and other papers and documents in the possession or under the control of the Borrower or any computer bureau or service Borrower from time to time acting for the Borrower; and, all other tangible and intangible property of the Borrower. Borrower will execute such financing statements and other documents to evidence and perfect this security interest, as Lender shall request. "*Uniform Commercial Code*" shall mean the Uniform Commercial Code as in effect in the State of California from time to time or, by reason of mandatory application, any other applicable jurisdiction.

Lender is hereby granted a perfected and continuing security interest in said Collateral, including the tangible and intangible assets, accounts receivable, good will and any other potential or realized value of the Collateral. Lender may, at Lender's option, declare immediately due and payable all sums secured by the Collateral upon the sale or transfer, without Lender's prior written consent, of all or any part of the Collateral, or any interest in the Collateral, or upon the breach of any provision contained in this Promissory Note. A "sale or transfer" means the conveyance of Collateral or any right, title or interest in the Collateral; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Collateral, or by any other method of conveyance of an interest in the Collateral. If any Borrower is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than five percent (5%) of the interests of any Borrower.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's aforementioned companies identified as Collateral, Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**AMENDMENTS AND WAIVERS.** Any term of this Note may be amended only with the written consent of the Borrower and the Lender. Any amendment or waiver effected in accordance with this Section shall be binding upon the Borrower, the Lender and each transferee of any Note.

**LOSS OF NOTE.** Upon receipt by the Borrower of evidence satisfactory to it of the loss, theft, destruction or mutilation of this Note or any Note exchanged for it, and indemnity satisfactory to the Borrower (in case of loss, theft or destruction) or surrender and cancellation of such Note (in the case of mutilation), the Borrower will make and deliver in lieu of such Note a new Note of like tenor.

**SUBORDINATION.** The Borrower represents and warrants that the Lender is a Senior Debt holder to the Borrower's Company and the assets and property pledged as Collateral and that there will be no subordination. For the purposes of this Section, "Senior Debt" shall mean the principal of and interest on (and all other costs, charges and other obligations now or hereafter existing under) any indebtedness of the Borrower's Company now or hereafter existing, which is (a) secured by any mortgage, lien, pledge, charge or encumbrance of any kind upon property owned by the Borrower or Borrower's Company or (b) owed to a bank, leasing company or other commercial or institutional lender.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

By: _____
Moses Said, on behalf of all "Borrower" entities

## UCC FINANCING STATEMENT

*FOLLOW INSTRUCTIONS*

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Dr. Charbel Maksoud

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

Dr. Charbel Maksoud
3400 Dogwood Cir.
Loma Linda, MO 64804

**15-7455634696**
**03/20/2015 17:00**

**FILED**
CALIFORNIA
SECRETARY OF STATE
SOS

47850640002   UCC 1 FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Said | Moses | | |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 11 Sarteano Dr. | Newport Coast | CA / 92657 | USA |

**2. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Said | Abbey | | |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 11 Sarteano Dr. | Newport Coast | CA / 92657 | USA |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only <u>one</u> Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Maksoud | Charbel | | Dr |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 3400 Dogwood Cir. | Loma Linda | MO / 64804 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

The following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which each Borrower is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

- A 5.74 carat diamond ring with band appraised at $155,000;
- A men's Platinum Day Date Presidential **Rolex** valued at $52,000;
- A Rolls Royce Ghost 2 nd VIN scaRRac Fic 52528 valued at $240,000;
- A Range Rover HSE VIN salgvn tuf 2f 3 lG valued at $90,000

Borrower represents that each or the foregoing items of Collateral is owned free and clear without any encumbrances.

Continued on attached additional pages.

**5.** Check <u>only</u> if applicable and check <u>only</u> one box:     ☐ (see UCC1Ad, item 17 and instructions)     ☐ being administered by a Decedent's Personal Representative

**6a.** Check <u>only</u> if applicable and check <u>only</u> one box:     ☐ Public-Finance Transaction     ☐ Manufactured-Home Transaction     ☐ A Debtor is a Transmitting Utility     **6b.** Check <u>only</u> if applicable and check <u>only</u> one box:     ☐ Agricultural Lien     ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):**     ☐ Lessee/Lessor     ☐ Consignee/Consignor     ☐ Seller/Buyer     ☐ Bailee/Bailor     ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**

## EXHIBIT "A"

## UCC FINANCING STATEMENT ADDENDUM

In addition, "Collateral" shall refer to all tangible and intangible assets, including but not limited to inventory, equipment, accounts, account receivables (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to promissory notes and deeds of trust), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, rents, lease rights, money, any other rights to payment and performance, and general intangibles (including but not limited to all software and all payment right intangibles); all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations owned or controlled by, or otherwise in the possession, custody or control of Lender, including but not limited to any and all such assets owned or controlled by Borrower and his spouse, including but not limited such assets owned or controlled by CONSTRUCTION MANAGEMENT CONSULTANTS COMPANY INTERNATIONAL; FORTIS PROPERTY INVESTMENT GROUP, LLC; VANDALITE CONSTRUCTION MANAGEMENT; or any of said companies' principals, which Lender hereby unequivocally represents Lender has the authority to bind to all terms and conditions set forth in this Note, or any of said companies' affiliates, predecessors or successors, parent, subsidiary or holding entities; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing Collateral; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing Collateral; all proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process; and all records and data relating to any of the assets described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Borrower's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

"Collateral" shall further refer to all of Borrower's interest in all accounts and general intangibles (each as defined in the Uniform Commercial Code) of the Borrower constituting a right to the payment of money, whether or not earned by performance, including all moneys due and to become due to the Borrower in repayment of any loans or advances, in payment for goods (including Inventory and Equipment) sold or leased or for services rendered, in payment of tax refunds and in payment of any guarantee of any of the foregoing (collectively, the "_Accounts_"); all contract rights and general intangibles now owned or hereafter acquired, including, without limitation, all leases license agreements, franchise agreements, blueprints, drawings, purchase orders, customer lists, customer list databases and related information, route lists, infringements, claims, computer programs, computer discs, computer tapes, literature, reports, catalogs, design rights, income tax refunds, payments of insurance and rights to payment of any kind, all copyrights, copyright registrations and applications, copyright renewals or extensions, patents and patent applications, all reissues, divisions, continuations, renewals, extensions and continuations-in-part of all patents or patent applications, all trademarks, trade names, trade styles, service marks, logos, together with product lines and goodwill of the business connected with the use of, or otherwise symbolized by, each such trade name, trademark and service mark, trademark and service mark registrations and applications for trademark and service mark registrations, all renewals and extensions of any trademarks, tradenames, trade styles, and service marks, all trade secret rights, including all rights to unpatented inventions, know-how, operating manuals, license rights an agreements and confidential information, all mask work or similar rights available for the protection of semiconductor chips, and all rights in the foregoing intellectual property to income, royalties, damages, and other payments, and all rights to sue for all past, present and future infringements, and all rights otherwise accruing under or pertaining to any of the foregoing throughout the world ("_Intellectual Property_"); instruments, chattel paper or letters of credit (each as defined in the Uniform Commercial Code) of the Borrower evidencing, representing, arising from or existing in respect of, relating to, securing or otherwise supporting the payment of, any of the Accounts (collectively, the "_Instruments_"); all inventory (as defined in the Uniform Commercial Code) and all other goods of the Borrower that are held by the Borrower for sale, lease or furnishing under a contract of service, that are so leased or furnished or that constitute raw materials, work in process or material used or consumed in its business, including all spare parts and related supplies, all goods obtained by the Borrower in exchange for any such goods, all products made or processed from any such goods and all substances, if any, commingled with or added to any such goods (collectively, the "_Inventory_"); equipment (as defined in the Uniform Commercial Code) and all other goods of the Borrower that are used or bought for use primarily in its business, including all spare parts and related supplies, all goods obtained by the Borrower in exchange for any such goods, all substances, if any, commingled with or added to such goods and all upgrades and other improvements to such goods, in each case to the extent not constituting Inventory (collectively, the "_Equipment_"); all documents of title (as defined in the Uniform Commercial Code) or other receipts of the Borrower covering, evidencing or representing Inventory or Equipment (collectively, the "_Documents_"); all contracts and other agreements of the Borrower relating to the sale or other disposition of all or any part of the Collateral and all rights, warranties, claims and benefits of the Borrower against any person arising out of, relating to or in connection with all or any part of the Collateral of the Borrower, including any such rights, warranties, claims or benefits against any person storing or transporting any Inventory or Equipment or issuing any Documents; all other accounts or general intangibles of the Borrower not constituting Accounts, including, to the extent related to all or any part of the other Collateral, all books, correspondence, credit files, records, invoices, tapes, cards, computer runs and other papers and documents in the possession or under the control of the Borrower or any computer bureau or service Borrower from time to time acting for the Borrower; and, all other tangible and intangible property of the Borrower. Borrower will execute such financing statements and other documents to evidence and perfect this security interest, as Lender shall request. "_Uniform Commercial Code_" shall mean the Uniform Commercial Code as in effect in the State of California from time to time or, by reason of mandatory application, any other applicable jurisdiction.

Lender is hereby granted a perfected and continuing security interest in said Collateral, including the tangible and intangible assets, accounts receivable, together with any other potential or realized value of the Collateral. Lender may, at Lender's option, declare immediately due and payable all sums secured by the Collateral upon the sale or transfer, without Lender's prior written consent, of all or any part of the Collateral, or any interest in the Collateral, or upon the breach of any provision contained in this Promissory Note. A 'sale or transfer' means the conveyance of Collateral or any right, title or interest in the Collateral; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Collateral, or by any other method of conveyance of Collateral interest. If any Borrower is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the interests of any Borrower.

4785064000 2

# Exhibit 2

# Forged and Fraudulent Real Property Purchase Agreement

**- FIRST AMERICAN TITLE, A14, JIMG**    **SANTA BARBARA, CA**

**03/05/2015  09:10AM  BZNX**    **PAGE 1 OF 1**

**SANTA BARBARA  2014-15 TAX ROLL    INVESTIGATIVE SEARCH RESULTS**

### CUSTOMER SERVICE REQUEST ONLY
### PAYMENTS AS OF 03/02/2015
### SEARCH PARAMETERS

**ENTERED APN:**    117-330-091

| ✔ **APN:  117-330-091** | **BILL:  2014-1090747** | |
|---|---|---|

**TRA:**    03-018 - CITY OF SANTA MARIA        **ACQ DATE:** 11/21/2008        **DOC#:** 2008-65430

**LEGAL:** MAP P BOOK 0055 PAGE 0032 BLOCK LOT 2

**SITUS:** 2100 S BLOSSER RD SANTA MARIA CA 93455

**MAIL:**   750 PISMO SAN LUIS OBISPO CA 93401

| **ASSESSED OWNER(S)** | | **2014-15 ASSESSED VALUES** |
|---|---|---|
| PACIFIC RESEARCH CENTER LLC | LAND | 1,157,590 |
| | IMPROVEMENTS | 4,140,619 |
| | TAXABLE | **5,298,209** |

| **2014-15 TAXES** | **1ST INST** | **2ND INST** | **TOTAL TAX** |
|---|---|---|---|
| STATUS | PAID | OPEN | |
| PAYMENT DATE | 12/10/2014 | | |
| DELINQUENT DATE | 12/10/2014 | 04/10/2015 | |
| INSTALLMENT | 28,927.17 | 28,927.17 | 57,854.34 |
| PENALTY | 2,892.72 | 2,922.72 | 5,815.44 |
| BALANCE DUE | 0.00 | 28,927.17 | **28,927.17** |

| **ASSESSMENT DETAIL** | | | |
|---|---|---|---|
| **FUND** | **TYPE** | **AMOUNT** | **DESCRIPTION OF ASSESSMENT(S)** |
| 0000 | GENERAL | 52,982.10 | COUNTY GENERAL FUND |
| 8351 | SCHOOL | 1,355.81 | SANTA MARIA JT UN HIGH BOND 2000 |
| 9421 | SCHOOL | 1,324.55 | ALLAN HANCOCK CC BOND 2006 |
| 8355 | SCHOOL | 1,040.04 | SANTA MARIA JT UN HIGH BOND 2004 |
| 2561 | MAINTENANCE | 746.55 | SANTA MARIA FLD ZN BEN ASSMT |
| 3935 | LANDSCAPE | 405.29 | STA MARIA SOUTHWEST LANDSCAPE |
| | | 57,854.34 | TOTAL OF SPECIAL ASSESSMENTS |

| **ADDITIONAL PROPERTY INFORMATION** | | |
|---|---|---|
| **USE CODE:**    3100 | **LOT SQ FEET:**    375,051 | |

### END OF SEARCH

Branch :A14 User :JIMG  Comment:       Station Id :BZNX
Case 8:16-ap-01129-CB Doc 1 Filed 05/08/16 Entered 05/08/16 22:24:07 Desc
Main Document  Page 26 of 54

2008-0065436

**RECORDING REQUESTED BY:**
Chicago Title Company
**Escrow No.:** 08-33400624-MB
**Locate No.:** CACTI7740-7740-1334-0033400624
**Title No.:** 08-33400624-DL

| | Recorded | REC FEE | 17.00 |
| Official Records | |
| County of | CONFORMED COPY | 1.00 |
| Santa Barbara |
| Joseph E. Holland | |

**When Recorded Mail Document
and Tax Statement To:**
Pacific Research Center LLC
750 Pismo Street
San Luis Obispo, CA 93401

08:00AM 21-Nov-2008 | LC Page 1 of 4

4 /W

APN: portion of 117-330-085        SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED

The undersigned grantor(s) declare(s)
Documentary transfer tax is $ ◯
[ ] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale,
[ ] Unincorporated Area X City of **Santa Maria,**
**"This conveyance changes the manner in which title is held, grantor(s) and grantee(s) remain the same and continue to hold the same proportionate interest, R & T 11925."**

**FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,** Robin L. Rossi, Trustee of the Robin L. Rossi Trust u/t/d October 19, 1990, as to an undivided 46.2492 interest and Donald G. Scanlin, Trustee of the Scanlin 1989 Trust u/t/d October 13, 1989, as to an undivided 46.84% interest and Duane F. Young, a Single Man, as to an undivided 6.9108%

**hereby GRANT(S) to** Pacific Research Center LLC a limited liability company

**the following described real property in the City of Santa Maria,** County of **Santa Barbara,** State of **California:**
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

DATED: November 11, 2008

State of California
County of SAN LUIS OBISPO    )
             )
On NOVEMBER 11, 2008  before me,
VICKEY HERNANDEZ , Notary Public
(here insert name and title of the officer), personally appeared
ROBIN L. ROSSI

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

The Robin L. Rossi Living Trust
u/t/d October 19, 1990

By: _____
  Robin L. Rossi, Trustee

The Scanlin 1989 Trust u/t/d October 13, 1989

By: _____
  Donald G. Scanlin, Trustee

_____
Duane F. Young

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

**VICKEY HERNANDEZ**
Commission # 1589674
Notary Public - California
San Luis Obispo County
My Comm. Expires Jun 25, 2009

## MAIL TAX STATEMENTS AS DIRECTED ABOVE

FD-213 (Rev 12/07)       GRANT DEED
(grant)(12-07)

## ACKNOWLEDGMENT

STATE OF CALIFORNIA                              )
                                                )
                                                )  ss.
COUNTY OF SAN LUIS OBISPO                        )

On __NOVEMBER 17__, 2008, before me, Vickey Hernandez, Notary Public, personally appeared DONALD G. SCANLIN, who proved to me on the basis of satisfactory evidence, to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity), and that by his signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Place Notary Seal Below                 WITNESS my hand and official seal.

                                        Signature _____
                                        My Commission expires: June 25, 2009



VICKEY HERNANDEZ
Commission # 1589874
Notary Public - California
San Luis Obispo County
My Comm. Expires Jun 25, 2009

## ACKNOWLEDGMENT

STATE OF CALIFORNIA                              )
                                                )
                                                )  ss.
COUNTY OF SAN LUIS OBISPO                        )

On __NOVEMBER 13__, 2008, before me, Vickey Hernandez, Notary Public, personally appeared DUANE YOUNG, who proved to me on the basis of satisfactory evidence, to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity), and that by his signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Place Notary Seal Below                 WITNESS my hand and official seal.

                                        Signature _____
                                        My Commission expires: June 25, 2009

VICKEY HERNANDEZ
Commission # 1589874
Notary Public - California
San Luis Obispo County
My Comm. Expires Jun 25, 2009

# Exhibit A

### Legal Description

Being a portion of Parcel 2 of the Pacific Research Center Parcel Map, Tract 5781, in the City of Santa Maria, according to the map thereof filed in Parcel Map Book 55, Pages 32 through 34, in the office of the County Recorder, County of Santa Barbara, State of California, more particularly described as follows:

Being all of said Parcel 2 **EXCEPTING THEREFROM** all that portion as described and conveyed in the Grant Deed to the City of Santa Maria recorded 11.21.08, 2008 as Instrument No. 2008- 0065430 Official Records, in the office of said County Recorder.

### End of Description

Containing 8.61 acres more or less

The afore described parcel is depicted as Parcel One on the sketch entitled Exhibit B, attached hereto and by reference incorporated herein.

This description was prepared by me or under my direction in conformance with the requirements of the Professional Land Surveyor's Act this 14th day of November, 2008.

Jon McKellar
PLS 7578
License Expiration Date: 31 December 2009



✓ CC doc                        Page 1 of 2



*Recording Requested By: SIMPLIFILE*

**RECORDING REQUESTED BY:**
*First American Title Insurance Company*
*National Commercial Services*
NCS-699529-SA1

**WHEN RECORDED MAIL DOCUMENT TO:**

Rabobank, N.A.
915 Highland Pointe Dr., Suite 350
Roseville, CA  95678
Attn: Mr. Ot Quast

```
2014-0060528
          Recorded      | REC FEE        24.00
     Official Records    |
        County of         |
       Santa Barbara     |
     Joseph E. Holland   |
   County Clerk Recorder |
                          |
                          | EC
  09:31AM 31-Dec-2014  | Page 1 of 4
```

*THIS SPACE FOR RECORDER'S USE ONLY*

# GRANT DEED

*THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION*
*(ADDITIONAL RECORDING FEE APPLIES)*

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INSURANCE CO.
NATIONAL COMMERCIAL SERVICES

NCS- 699529-SA1

**RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:**

Rabobank, N.A.
915 Highland Pointe Drive, Suite 350
Roseville, CA 95678
Attn: Mr. Ot Quast

**MAIL TAX STATEMENTS TO:**

SAME AS ABOVE

The undersigned grantor declares:
Documentary Transfer Tax not shown pursuant to
Section 11932 of the Revenue and Taxation Code, as
amended.

SPACE ABOVE FOR RECORDER'S USE ONLY

## GRANT DEED

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, PACIFIC RESEARCH CENTER LLC, a California limited liability company ("Grantor") hereby grants to RABOBANK, N.A., the real property described on Exhibit A attached hereto and incorporated herein by reference, together with all appurtenant improvements, rights, easements, tenements and estates.

See **EXHIBIT A** attached hereto and incorporated by reference herein.

**GRANTOR:**

PACIFIC RESEARCH CENTER LLC, a California
limited liability company

Dated: December **24** 2014        By: _____
                                       Robin L. Rossi
                                   Its: Manager

Dated: December **29**, 2014        By: _____
                                       Douglas Filippini
                                   Its: Manager

1

Rabobank-Santa Maria Purchase-2100 S  Blosser Rd-Grant Deed-Final-12-23-14

## CERTIFICATE OF ACKNOWLEDGMENT

State of California        )
                               )
County of   __Monterey__     )

On    December 24, 2014 before me,    __Christine Chin__   , Notary Public, personally appeared    Robin L. Rossi   , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____               (Seal)

[Notary Seal: CHRISTINE CHIN, COMM. # 2030657, NOTARY PUBLIC - CALIFORNIA, MONTEREY COUNTY, My Comm. Exp. JULY 19, 2017]

## CERTIFICATE OF ACKNOWLEDGMENT

State of California        )
County of __San Luis Obispo__

On __Dec. 29, 2014__ before me, __Shauna Cavin__   , Notary Public, personally appeared __Douglas Filipponi__   , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Shauna Cavin_               (Seal)

[Notary Seal: SHAUNA CAVIN, COMM. # 1959406, NOTARY PUBLIC - CALIFORNIA, LOS ANGELES COUNTY, COMM. EXPIRES NOV. 5, 2015]

Acknowledgment

Rabobank-Santa Maria Purchase-2100 S Blosser Rd-Grant Deed-Final-12-23-14

## EXHIBIT A

### LEGAL DESCRIPTION

Real property in the City of Santa Maria, County of Santa Barbara, State of California, described as follows:

PARCEL A:

PARCEL ONE AS SHOWN ON CERTIFICATE OF COMPLIANCE NO. CC-2008-0001 AS EVIDENCED BY DOCUMENT RECORDED NOVEMBER 21, 2008 AS INSTRUMENT NO. 08-65431 OF OFFICIAL RECORDS, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEING A PORTION OF PARCEL 2 OF THE PACIFIC RESEARCH CENTER PARCEL MAP, TRACT 5781, IN THE CITY OF SANTA MARIA, ACCORDING TO THE MAP THEREOF FILED IN PARCEL MAP BOOK 55, PAGES 32 THROUGH 34, IN THE OFFICE OF THE COUNTY RECORDER, COUNTY OF SANTA BARBARA, STATE OF CALIFORNIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEING ALL OF SAID PARCEL 2 EXCEPTING THEREFROM ALL THAT PORTION AS DESCRIBED AND CONVEYED IN THE GRANT DEED TO THE CITY OF SANTA MARIA RECORDED NOVEMBER 21, 2008 AS INSTRUMENT NO. 2008-0065430 OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER.

EXCEPTING THEREFROM ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS, NATURAL GAS RIGHTS, AND OTHER HYDROCARBON BY WHATEVER NAME KNOWN, THAT MAY BE WITHIN OR UNDER THE LAND HEREINABOVE DESCRIBED, TOGETHER WITH THE RIGHT OF DRILLING, EXPLORING AND OPERATING THEREFOR AND REMOVING THE SAME FROM SAID LAND, INCLUDING THE RIGHT TO WHIPSTOCK OR DIRECTIONALLY DRILL FROM LANDS OTHER THAN THOSE HEREINABOVE DESCRIBED, AND TO BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS UNDER AND BENEATH OR BEYOND THE EXTERIOR LIMITS THEREOF, WITHOUT ANY RIGHT TO USE THE SURFACE OF THE LAND HEREINABOVE DESCRIBED OR THE SUBSURFACE ADJACENT THERETO LOCATED ABOVE A DEPTH OF 500 FEET BELOW THE SURFACE THEREOF OR TO DRILL, EXPLORE OR CONDUCT OPERATIONS THEREON OR THEREIN, AS RESERVED IN THE DEED FROM PATRICIA VICENTE, MARGARET VICENTE PERRY, LAURA VICENTE LIMA, AND THELMA VICENTE GUGGIA TO SANTA BARBARA RESEARCH CENTER, A CALIFORNIA CORPORATION RECORDED NOVEMBER 5, 1982 AS INSTRUMENT NO. 82-46638 OF OFFICIAL RECORDS.

PARCEL B:

NON-EXCLUSIVE EASEMENTS FOR A PARTY WALL AND UTILITIES AND INCIDENTAL PURPOSES AS DEFINED AND DESCRIBED IN ARTICLES 3 AND 4 OF THAT CERTAIN "OPERATING AGREEMENT AND DECLARATION OF COVENANTS, CONDITIONS, RESTRICTIONS AND GRANT OF RECIPROCAL EASEMENTS" RECORDED NOVEMBER 21, 2008 AS INSTRUMENT NO. 2008-0065433 OF OFFICIAL RECORDS, SANTA BARBARA COUNTY, CA.

APN: 117-330-091

Exhibit A

Rabobank-Santa Maria Purchase-2100 S Blosser Rd-Grant Deed-Final-12-23-14

**= M E T R O S C A N   P R O P E R T Y   P R O F I L E =**
*Santa Barbara (CA)*

```
*******************************************************************************
*                                                                             *
*                   ===============================                           *
*                   <<< OWNERSHIP INFORMATION >>>                             *
*                   ===============================                           *
*                                                                             *
*        Parcel Number :117 330 91                                           *
*        Owner         :Rabobank Nederland                                    *
*        CoOwner       :                                                      *
*        Site Address  :2100 S Blosser Rd Santa Maria 93458                  *
*        Mail Address  :915 Highland Pointe Dr #350 Roseville Ca 95678       *
*        Owner Phone   :                                                      *
*                                                                             *
*                   ===================================                       *
*                   <<< SALES AND LOAN INFORMATION >>>                        *
*                   ===================================                       *
*                                                                             *
*        Transferred :12/31/2014        Loan Amount   :                      *
*        Document #  :60528             Lender        :                      *
*        Sale Price  :Non-Disc          Loan Type     :                      *
*        Deed Type   :Grant Deed        Interest Rate :                      *
*        % Owned     :100               Vesting Type  :Misc                  *
*                                                                             *
*                   =====================================                     *
*                   <<< ASSESSMENT AND TAX INFORMATION >>>                    *
*                   =====================================                     *
*                                                                             *
*        Land      :$1,157,590          Exempt Type   :                      *
*        Structure :$4,140,619          Exempt Amount :                      *
*        Other     :                    Tax Rate Area :03018                 *
*        Total     :$5,298,209          14-15 Taxes   :$57,854.34            *
*        % Improved :78                                                      *
*                                                                             *
*                   ===============================                           *
*                   <<< PROPERTY DESCRIPTION >>>                             *
*                   ===============================                           *
*                                                                             *
*        Map Grid :796 F5                                                    *
*        Census   :Tract:24.02          Block:2                              *
*        Land Use :3100 Ind,Light Manufacturing                             *
*        Legal    :                                                          *
*                 :                                                          *
*        TractNum :                                                          *
*                                                                             *
*                   =================================                         *
*                   <<< PROPERTY CHARACTERISTICS >>>                          *
*                   =================================                         *
*                                                                             *
* Total Rooms :          Units      :          Roof Material :               *
* Bedrooms    :          Stories    :          Patio         :               *
* Bathrooms   :          Year Built :          Lot Acres     :8.61           *
* Air Condtn  :          Eff Year Built :       Lot SqFt      :375,052        *
* Heating     :          Building SqFt :        Lot Dimension :               *
* HeatSource  :          Building Style :       Garage        :               *
* Fireplace   :          Foundation  :          Garage Spaces :               *
* Pool        :          Spa        :          View          :               *
*                                                                             *
*******************************************************************************
```

*Information compiled from various sources.  CoreLogic makes no representations
or warranties as to the accuracy or completeness of information contained in this report.*

CALIFORNIA
ASSOCIATION
OF REALTORS®

**COMMERCIAL PROPERTY PURCHASE AGREEMENT**
**AND JOINT ESCROW INSTRUCTIONS**
(NON-RESIDENTIAL)
(C.A.R. Form CPA, Revised 11/14)

Date Prepared: _03/11/2015_

**1. OFFER:**
  **A. THIS IS AN OFFER FROM** _Fortis Property Investment Group, LLC_ ("Buyer").
    ☐ Individual(s), ☐ A Corporation, ☐ A Partnership, ☒ An LLC, ☐ An LLP, or ☐ Other _____
  **B. THE REAL PROPERTY** to be acquired is _2100 S Blosser Rd_ , situated in _Santa Maria_ (City),
    _Santa Barbara_ County, California, _93458_ (Zip Code), Assessor's Parcel No. _117-330-085_ ("Property").
  **C. THE PURCHASE PRICE** offered is _Three Million_
    Dollars $ _3,000,000.00_ .
  **D. CLOSE OF ESCROW** shall occur on _March 31, 2015_ (date)(or _____ **Days** After Acceptance).
  **E.** Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.
**2. AGENCY:**
  **A. DISCLOSURE:** The Parties each acknowledge receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD)
  **B. CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
    Listing Agent _Rabobank N.A._ (Print Firm Name) is the agent of (check one):
    ☒ the Seller exclusively; or ☐ both the Buyer and Seller.
    Selling Agent _Keller Williams Newport Estates_ (Print Firm Name) (if not the same
    as the Listing Agent) is the agent of (check one): ☐ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
  **C. POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).
**3. FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
  **A. INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _550,000.00_
    **(1)** Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds
    transfer, ☐ cashier's check, ☐ personal check, ☐ other _____ within 3 business days
    after Acceptance (or _____ );
    **OR (2)** ☐ Buyer Deposit with Agent: Buyer has given the deposit by personal check (or _____ )
    to the agent submitting the offer (or to _____ ), made payable to
    _____ . The deposit shall be held uncashed until Acceptance and then deposited
    with Escrow Holder within **3** business days after Acceptance (or _____ ).
    Deposit checks given to agent shall be an original signed check and not a copy.
    (Note: Initial and increased deposit checks received by agent shall be recorded in Broker's trust fund log.)
  **B. INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of. . . $ _____
    within _____ **Days** After Acceptance (or _____ ).
    If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased
    deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form
    RID) at the time the increased deposit is delivered to Escrow Holder.
  **C.** ☒ **ALL CASH OFFER:** No loan is needed to purchase the Property. Written verification of sufficient funds
    to close this transaction IS ATTACHED to this offer or ☐ Buyer shall, within **3 (or** _____ **) Days** After
    Acceptance, Deliver to Seller such verification.
  **D. LOAN(S):**
    **(1) FIRST LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
    This loan will be conventional financing or ☐ FHA, ☐ VA, ☐ Seller financing (C.A.R. Form SFA),
    ☐ assumed financing (C.A.R. Form AFA), ☐ subject to financing ☐ Other _____ . This
    loan shall be at a fixed rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not
    to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of
    the loan amount.
    **(2)** ☐ **SECOND LOAN** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
    This loan will be conventional financing or ☐ Seller financing (C.A.R. Form SFA), ☐ assumed financing
    (C.A.R. Form AFA), ☐ subject to financing ☐ Other _____ . This loan shall be at a fixed
    rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
    Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
  **E. ADDITIONAL FINANCING TERMS:** _____
    _____
  **F. BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of . . . . . . . . . . . . . . . . . . . . $ _2,450,000.00_
    to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
  **G. PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _3,000,000.00_
  **H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1))
    shall, within **3 (or** ____ **) Days** After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs.
    ( ☐ Verification attached.)

Buyer's Initials ( _MS_ ) ( _____ )        Seller's Initials ( _JF_ ) ( _____ )

© 2014, California Association of REALTORS®, Inc.
**CPA REVISED 11/14 (PAGE 1 OF 11)**

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 1 OF 11)**

Property Address: **2100 S Blosser Rd, Santa Maria, 93458**    Date: **March 11, 2015**

**I.  APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☒ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 18B(3), in writing, remove the appraisal contingency or cancel this Agreement within **17 (or ____ ) Days** After Acceptance.

**J.  LOAN TERMS:**

**(1) LOAN APPLICATIONS:** Within **3 (or ____ ) Days** After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)

**(2) LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.

**(3) LOAN CONTINGENCY REMOVAL:**

Within **21 (or ____ ) Days** After Acceptance, Buyer shall, as specified in paragraph 18, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

**(4) ☒ NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**(5) LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**K.  BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing.  Buyer shall pursue the financing specified in this Agreement.  Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4.  SALE OF BUYER'S PROPERTY:**

**A.** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.

**OR B.** ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5.  ADDENDA AND ADVISORIES:**

A.  ADDENDA:          ☐ Addendum # _____    (C.A.R. Form ADM)
   ☐ Back Up Offer Addendum (C.A.R. Form BUO)          ☐ Court Confirmation Addendum (C.A.R. Form CCA)
   ☐ Septic, Well and Property Monument Addendum (C.A.R.  Form SWPI)
   ☐ Short Sale Addendum (C.A.R. Form SSA)          ☐ Other

B.  BUYER AND SELLER ADVISORIES:          ☑ Buyer's Inspection Advisory (C.A.R. Form BIA)
   ☐ Probate Advisory (C.A.R. Form PAK)          ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
   ☐ Trust Advisory (C.A.R. Form TA)          ☒ REO Advisory (C.A.R. Form REO)
   ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)          ☐ Other

**6.  OTHER TERMS:** _____

_____

_____

**7.  ALLOCATION OF COSTS**

**A.  INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed, in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**

**(1)** ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report, including tax ☒ environmental ☐ Other: _____
   prepared by _____ .

**(2)** ☒ Buyer ☐ Seller shall pay for the following Report **Property Survey**
   prepared by _____ .

**(3)** ☒ Buyer ☐ Seller shall pay for the following Report **Environmental impact study**
   prepared by _____ .

**B.  GOVERNMENT REQUIREMENTS AND RETROFIT:**

**(1)** ☐ Buyer ☒ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.

Buyer's Initials ( MS ) ( _____ )          Seller's Initials ( JF ) ( _____ )

**CPA REVISED 11/14 (PAGE 2 OF 11)**

**COMMERCIAL PROPERTY PURCHASE AGREEMENT  (CPA PAGE 2 OF 11)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          **Fortis Group 2100**

Property Address: **2100 S Blosser Rd, Santa Maria, CA 93458**                                    Date: **March 11, 2015**

**(2) (i)** ☒ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.

**(ii)** ☒ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.

**(iii)** Buyer shall be provided, within the time specified in paragraph 18A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

**C. ESCROW AND TITLE:**

**(1)** (a) ☒ Buyer ☒ Seller shall pay escrow fee **Each party shall pay own Escrow fee** _____ .

(b) Escrow Holder shall be **Cast Pointe Escrow, Kim Ornellas** _____ .

(c) The Parties shall, within **5 (or ___ ) Days** After receipt, sign and return Escrow Holder's general provisions.

**(2)** (a) ☐ Buyer ☒ Seller shall pay for **owner's** title insurance policy specified in paragraph 17E _____ .

(b) Owner's title policy to be issued by **Seller's Choice or First American Title** _____ .

(Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)

**D. OTHER COSTS:**

**(1)** ☐ Buyer ☒ Seller shall pay County transfer tax or fee _____

**(2)** ☐ Buyer ☒ Seller shall pay City transfer tax or fee _____

**(3)** ☐ Buyer ☐ Seller shall pay Owners' Association ("OA") transfer fee _____ .

**(4)** Seller shall pay OA fees for preparing all documents required to be delivered by Civil Code §4525.

**(5)** ☐ Buyer ☒ Seller shall pay OA fees for preparing all documents other than those required by Civil Code §4525.

**(6)** ☐ Buyer ☐ Seller shall pay for any private transfer fee _____

**(7)** ☐ Buyer ☐ Seller shall pay for _____

**(8)** ☐ Buyer ☐ Seller shall pay for _____

**8. CLOSING AND POSSESSION:**

**A.** Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.

**B. Seller-occupied or vacant property:** Possession shall be delivered to Buyer: (i) at 6 PM or (____ ☐ AM/ ☐ PM) on the date of Close Of Escrow; (ii) ☐ no later than _____ calendar days After Close Of Escrow; or (iii) ☐ at _____ ☐ AM/ ☐ PM on _____ .

**C. Seller Remaining in Possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, ☐ C.A.R. Form CL for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

**D. Tenant Occupied Units:** Possession and occupancy, subject to the rights of tenants under existing leases, shall be delivered to Buyer on Close Of Escrow.

**E.** At Close Of Escrow: **(i)** Seller assigns to Buyer any assignable warranty rights for items included in the sale; and **(ii)** Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.

**F.** At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Owners' Association ("OA") to obtain keys to accessible OA facilities.

**9. SECURITY DEPOSITS:** Security deposits, if any, to the extent they have not been applied by Seller in accordance with any rental agreement and current Law, shall be transferred to Buyer on Close Of Escrow. Seller shall notify each tenant, in compliance with the Civil Code.

**10. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**

**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 10 B, C or D.

**B. ITEMS INCLUDED IN SALE:**

**(1)** All EXISTING fixtures and fittings that are attached to the Property;

**(2)** EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms.

**(3)** A complete inventory of all personal property of Seller currently used in the operation of the Property and included in the purchase price shall be delivered to Buyer within the time specified in paragraph 18.

**(4)** Seller represents that all items included in the purchase price are, unless identified pursuant to 10B(7) otherwise specified, owned by Seller. Within the time specified in paragraph 18, Seller shall give Buyer a list of fixtures not owned by Seller.

**(5)** Seller shall deliver title to the personal property by Bill of Sale, free and clear of all liens and encumbrances, and without seller warranty of condition regardless of value.

**(6)** As additional security for any note in favor of Seller for any part of the purchase price, Buyer shall execute a UCC-1 Financing Statement to be filed with the Secretary of State, covering the personal property included in the purchase, replacement thereof, and insurance proceeds.

**(7) LEASED OR LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 18A, (i) disclose to Buyer if any item or system specified in paragraph 10B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency of this Agreement as specified in paragraph 18B.

Buyer's Initials ( _MLS_ ) ( _____ )                     Seller's Initials ( _JR_ ) ( _____ )

CPA REVISED 11/14 (PAGE 3 OF 11)

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 3 OF 11)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          Fortis Group 2100

DocuSign Envelope ID: 1768DE6A-EA2B-4D2D-8EBC-66CC8B5DCA51

Property Address: *2100 S Blosser Rd, Santa Maria, 93458*                                                   Date: *March 11, 2015*

**C. ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: *Office and manufacturing equipment*
                                                                                                                                                              .

**D. OTHER ITEMS: (1)** Existing integrated phone and automation systems, including necessary components such as intranet and Internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are ( ☐ are NOT) included in the sale.

**11. SELLER DISCLOSURES:**

**A. ENERGY DISCLOSURE:** Seller shall provide Buyer, at least 24 hours prior to execution of this Agreement, the Disclosure Summary Sheet, Statement of Energy Performance, Data Checklist, and the Facility Summary for the building as required by Public Resources Code Section 25402.10 and California Code of Regulations, Title 20, Sections 1680 through 1685. This requirement is effective for a building with total gross floor area square footage as follows: more than 50,000 square feet, July 1, 2013; more than 10,000 square feet and up to 50,000 square feet, January 1, 2014; and at least 5,000 square feet up to 10,000 square feet, July 1, 2014. For more information, see http://www.energy.ca.gov/AB1103/index.html

**B. NATURAL AND ENVIRONMENTAL DISCLOSURES:** Seller shall, within the time specified in paragraph 18, if required by Law: **(i)** Deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; **(ii)** even if exempt from the obligation to provide an NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

**C. ADDITIONAL DISCLOSURES:** Within the time specified in paragraph 18, Seller shall Deliver to Buyer, in writing, the following disclosures, documentation and information:

**(1) RENTAL SERVICE AGREEMENTS: (i)** All current leases, rental agreements, service contracts, and other agreements pertaining to the operation of the Property; and **(ii)** a rental statement including names of tenants, rental rates, period of rental, date of last rent increase, security deposits, rental concessions, rebates, or other benefits, if any, and a list of delinquent rents and their duration. Seller represents that no tenant is entitled to any concession, rebate, or other benefit, except as set forth in these documents.

**(2) INCOME AND EXPENSE STATEMENTS:** The books and records, including a statement of income and expense for the 12 months preceding Acceptance. Seller represents that the books and records are those maintained in the ordinary and normal course of business, and used by Seller in the computation of federal and state income tax returns.

**(3)** ☐ **TENANT ESTOPPEL CERTIFICATES:** (If checked) Tenant estoppel certificates (C.A.R. Form TEC) completed by Seller or Seller's agent, and signed by tenants, acknowledging: **(i)** that tenants' rental or lease agreements are unmodified and in full force and effect (or if modified, stating all such modifications); **(ii)** that no lessor defaults exist; and **(iii)** stating the amount of any prepaid rent or security deposit.

**(4) SURVEYS, PLANS AND ENGINEERING DOCUMENTS:** Copies of surveys, plans, specifications and engineering documents, if any, in Seller's possession or control.

**(5) PERMITS:** If in Seller's possession, Copies of all permits and approvals concerning the Property, obtained from any governmental entity, including, but not limited to, certificates of occupancy, conditional use permits, development plans, and licenses and permits pertaining to the operation of the Property.

**(6) STRUCTURAL MODIFICATIONS:** Any known structural additions or alterations to, or the installation, alteration, repair or replacement of, significant components of the structure(s) upon the Property.

**(7) GOVERNMENTAL COMPLIANCE:** Any improvements, additions, alterations or repairs made by Seller, or known to Seller to have been made, without required governmental permits, final inspections, and approvals.

**(8) VIOLATION NOTICES:** Any notice of violations of any Law filed or issued against the Property and actually known to Seller.

**(9) MISCELLANEOUS ITEMS:** Any of the following, if actually known to Seller: **(i)** any current pending lawsuit(s), investigation(s), inquiry(ies), action(s), or other proceeding(s) affecting the Property, or the right to use and occupy it; **(ii)** any unsatisfied mechanic's or materialman's lien(s) affecting the Property; and **(iii)** that any tenant of the Property is the subject of a bankruptcy.

**D. WITHHOLDING TAXES:** Within the time specified in paragraph 18A, to avoid required withholding Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law, (C.A.R. Form AS or QS).

**E. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/**. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.

**F. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

**(1) SELLER HAS: 7 (or ____ ) Days** After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or SSD).

**(2)** If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has **3 (or ____ ) Days** After Acceptance to request from the OA (C.A.R. Form HOA1): **(i)** Copies of any documents required by Law; **(ii)** disclosure of any pending or anticipated claim or litigation by or against the OA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of OA minutes for regular and special meetings; and **(v)** the names and contact information of all OAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the OA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 18B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to OA or management company to pay for any of the above.

Buyer's Initials ( MS ) ( _____ )                                         Seller's Initials ( JF ) ( _____ )

**CPA REVISED 11/14 (PAGE 4 OF 11)**

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 4 OF 11)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    Fortis Group 2100

DocuSign Envelope ID: 1768DE6A-EA2B-4D2D-8EBC-66CC8B5DCA51

Case 8:16-ap-01129-CB    Doc 1    Filed 05/08/16    Entered 05/08/16 22:24:07    Desc
Property Address: **2100 S Blosser Rd, Santa Maria, Dxxxxx**    Main Document    Page 39 of 54    Date: **March 11, 2015**

**12.** ☒ **ENVIRONMENTAL SURVEY** (If checked): Within _____ **Days** After Acceptance, Buyer shall be provided a phase one environmental survey report paid for and obtained by ☒ Buyer ☐ Seller. Buyer shall then, as specified in paragraph 18, remove this contingency or cancel this Agreement.

**13. SUBSEQUENT DISCLOSURES:** In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly Deliver a subsequent or amended disclosure or notice in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.**

**14. CHANGES DURING ESCROW:**
  **A.** Prior to Close Of Escrow, Seller may only engage in the following acts, ("Proposed Changes"), subject to Buyer's rights in paragraph 18: **(i)** rent or lease any vacant unit or other part of the premises; **(ii)** alter, modify, or extend any existing rental or lease agreement; **(iii)** enter into, alter, modify or extend any service contract(s); or **(iv)** change the status of the condition of the Property.
  **B.** At least **7 (or** _____ **) Days** prior to any Proposed Changes, Seller shall Deliver written notice to Buyer of any Proposed Changes.

**15. CONDITION OF PROPERTY:** Unless otherwise agreed in writing: **(i)** the Property is sold (a) "AS-IS" in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow.
  **A.** Seller shall, within the time specified in paragraph 18A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.
  **B.** Buyer has the right to conduct Buyer Investigations of the property and, as specified in paragraph 18B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.
  **C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

**16. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
  **A.** Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 18B. Within the time specified in paragraph 18B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: **(i)** inspect for lead-based paint and other lead-based paint hazards; **(ii)** inspect for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); **(iii)** review the registered sex offender database; **(iv)** confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; **(v)** review and seek approval of leases that may need to be assumed by Buyer; and **(vi)** satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations except to the extent required to prepare a Pest Control Report; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.
  **B.** Seller shall make the Property available for all Buyer Investigations. Buyer shall **(i)** as specified in paragraph 18B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and **(ii)** give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.
  **C.** Seller shall have water, gas, electricity and all operable dial lights on for Buyer's Investigations and through the date possession is made available to Buyer.
  **D. Buyer indemnity and seller protection for entry upon property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**17. TITLE AND VESTING:**
  **A.** Within the time specified in paragraph 18, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 18B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.
  **B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: **(i)** monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing.
  **C.** Within the time specified in paragraph 18A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

Buyer's Initials ( MS ) ( _____ )          Seller's Initials ( JF ) ( _____ )

**CPA REVISED 11/14 (PAGE 5 OF 11)**

**COMMERCIAL PROPERTY PURCHASE AGREEMENT  (CPA PAGE 5 OF 11)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          **Fortis Group 2100**

DocuSign Envelope ID: 1768DE6A-EA2B-4D2D-8EBC-66CC8B5DCA51

Case 8:16-ap-01129-CB    Doc 1    Filed 05/08/16    Entered 05/08/16 22:24:07    Desc
Property Address: **2100 S Blosser Rd, Santa Maria, Document**    Page 40 of 54    Date: **March 11, 2015**

**D.** At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

**E.** Buyer shall receive a standard coverage owners CLTA policy of title insurance. An ALTA policy or the addition of endorsements may provide greater coverage for Buyer. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and shall pay any increase in cost.

**18. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

**A. SELLER HAS: 7 (or ____ ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5A, 6, 7, 10B(7), 11A, B, C, D and F, 12, 15A and 17A. Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement if Seller has not Delivered the items within the time specified.

**B. (1) BUYER HAS: 17 (or ____ ) Days** After Acceptance, unless otherwise agreed in writing, to:

    **(i)** complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 10B(7) and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property.

    **(2)** Within the time specified in paragraph 18B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

    **(3)** By the end of the time specified in paragraph 18B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 18A, then Buyer has **5 (or ____ ) Days** After Delivery of any such items, or the time specified in paragraph 18B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

    **(4) Continuation of Contingency:** Even after the end of the time specified in paragraph 18B(1) and before Seller cancels, if at all, pursuant to paragraph 18C, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 18C(1).

**C. SELLER RIGHT TO CANCEL:**

    **(1) Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

    **(2) Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by paragraph 3A or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; **(ii)** Deliver a letter as required by paragraph 3J(1); **(iii)** Deliver verification as required by paragraph 3C or 3H or if Seller reasonably disapproves of the verification provided by paragraph 3C or 3H; or **(iv)** Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 25B; or **(v)** Provide evidence of authority to sign in a representative capacity as specified in paragraph 23. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer

**D. NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: **(i)** be in writing; **(ii)** be signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 (or ____ )** Days After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days** Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 18.

**E. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

**F. CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: **(i)** be signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 (or ____ ) Days** After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** Prior to the scheduled close of escrow.

**G. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel, one Party may make a written demand to Escrow Holder for the deposit (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, may promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).**

Buyer's Initials ( ____MS____ ) ( _____ )          Seller's Initials ( _____ ) ( _____ )

**CPA REVISED 11/14 (PAGE 6 OF 11)**

Property Address: **2100 S Blosser Rd, Santa Maria, CA 93458**  Date: **March 11, 2015**

**19. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**20. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within **5 (or ___ ) Days** Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 15; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**21. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, OA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER.  Prorations shall be made based on a 30-day month.

**22. BROKERS:**
   **A. COMPENSATION**: Seller or Buyer, or both, as applicable, agrees to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer.  Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
   **B. BROKERAGE**: Neither Buyer nor Seller has utilized the services of, or for any other reason owes compensation to, a licensed real estate broker (individual or corporate), agent, finder, or other entity, other than as specified in this Agreement, in connection with any act relating to the Property, including, but not limited to, inquiries, introductions, consultations and negotiations leading to this Agreement. Buyer and Seller each agree to indemnify, defend, and hold the other, the Brokers specified herein and their agents, harmless from and against any costs, expenses or liability for compensation claimed inconsistent with the warranty and representations in this paragraph.
   **C. SCOPE OF DUTY**: Buyer and Seller acknowledge and agree that Broker: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**23. REPRESENTATIVE CAPACITY:** If one or more Parties is signing the Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 40 or 41 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on the Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within 3 Days After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, resolution, or formation documents of the business entity).

**24. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
   **A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 9, 11D, 17, 18G, 21, 22A, 23, 24, 30, 38, 39, 41, 42 and paragraph D of the section titled Real Estate Brokers on page 11. If a Copy of the separate compensation agreement(s) provided for in paragraph 22A, or paragraph D of the section titled Real Estate Brokers on page 11 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.  Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within 3 (or ___ ) Days, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 11 or elsewhere in this Agreement.

Buyer's Initials ( MS ) ( _____ )    Seller's Initials ( JF ) ( _____ )

**CPA REVISED 11/14 (PAGE 7 OF 11)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    **Fortis Group 2100**



Property Address: **2100 S Blosser Rd, Santa Maria, 93458** _____ Date: **March 11, 2015**

**B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3** Days After Acceptance (or _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to  Buyer a Qualified Substitute statement that complies with federal Law.

**C.** Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 22A and paragraph D of the section titled Real Estate Brokers on page 11. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 22A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers.  Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

**D.** Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: **(i)** if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

**E.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3** Days after mutual execution of the amendment.

**25. REMEDIES FOR BUYER'S BREACH OF CONTRACT:**

**A.** Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

**B.** **LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R.FORM RID).**

Buyer's Initials _____ / _____          Seller's Initials _____ / _____

**26. DISPUTE RESOLUTION:**

**A.** **MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Consumer Mediation Center (**www.consumermediation.org**) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker.** Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. **Exclusions from this mediation agreement are specified in paragraph 26C.**

**B.** **ARBITRATION OF DISPUTES: The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration.  The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 26C.**

**"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

**"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials _____ / _____          Seller's Initials _____ / _____

Buyer's Initials ( MS ) ( _____ )          Seller's Initials ( JK ) ( _____ )

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Fortis Group 2100

Property Address: **2100 S Blosser Rd, Santa Maria, Ca 93458**    Date: **March 11, 2015**

**C. ADDITIONAL MEDIATION AND ARBITRATION TERMS:**

    **(1) EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.**

    **(2) PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i)The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (ii) the filing of a mechanic's lien.**

    **(3) BROKERS: Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to the Agreement.**

**27. SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**28. MULTIPLE LISTING SERVICE/PROPERTY DATA SYSTEM:** If Broker is a participant of a Multiple Listing Service ("MLS") or Property Data System ("PDS"), Broker is authorized to report to the MLS or PDS a pending sale and, upon Close Of Escrow, the terms of this transaction to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS or PDS.

**29. ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorneys fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 26A.

**30. ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the written consent of Seller. Such consent shall not be unreasonably withheld unless otherwise agreed in writing. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller (C.A.R. Form AOAA).

**31. SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon, and inure to the benefit of, Buyer and Seller and their respective successors and assigns, except as otherwise provided herein.

**32. ENVIRONMENTAL HAZARD CONSULTATION:** Buyer and Seller acknowledge: **(i)** Federal, state, and local legislation impose liability upon existing and former owners and users of real property, in applicable situations, for certain legislatively defined, environmentally hazardous substances; **(ii)** Broker(s) has/have made no representation concerning the applicability of any such Law to this transaction or to Buyer or to Seller, except as otherwise indicated in this Agreement; **(iii)** Broker(s) has/have made no representation concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property; and **(iv)** Buyer and Seller are each advised to consult with technical and legal experts concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property.

**33. AMERICANS WITH DISABILITIES ACT:** The Americans With Disabilities Act ("ADA") prohibits discrimination against individuals with disabilities. The ADA affects almost all commercial facilities and public accommodations. The ADA can require, among other things, that buildings be made readily accessible to the disabled. Different requirements apply to new construction, alterations to existing buildings, and removal of barriers in existing buildings. Compliance with the ADA may require significant costs. Monetary and injunctive remedies may be incurred if the Property is not in compliance. A real estate broker does not have the technical expertise to determine whether a building is in compliance with ADA requirements, or to advise a principal on those requirements. Buyer and Seller are advised to contact an attorney, contractor, architect, engineer or other qualified professional of Buyer's or Seller's own choosing to determine to what degree, if any, the ADA impacts that principal or this transaction.

**34. COPIES:** Seller and Buyer each represent that Copies of all reports, documents, certificates, approvals and other documents that are furnished to the other are true, correct and unaltered Copies of the original documents, if the originals are in the possession of the furnishing party.

**35. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**36. GOVERNING LAW:** This Agreement shall be governed by the Laws of the state of California.

**37. TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counteroffer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

**38. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

**39. DEFINITIONS:** As used in this Agreement:

    **A. "Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.

    **B. "Agreement"** means this document and any incorporated addenda, counter offers and written terms Signed by all Parties collectively forming the binding agreement between the Parties. All terms and conditions of any addenda checked and Signed are incorporated into this Agreement.

Buyer's Initials ( MLS ) ( _____ )    Seller's Initials ( JF ) ( _____ )

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 9 OF 11)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com    Fortis Group 2100

Property Address: *2100 S Blosser Rd, Santa Maria, CA*                              Date: *March 11, 2015*

**C. "C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.
**D. "Close Of Escrow" or "COE"** means the date the grant deed, or other evidence of transfer of title, is recorded.
**E. "Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
**F. "Days"** means calendar days. However, after Acceptance, the last **Day** for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
**G. "Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.
**H. "Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
**I. "Deliver", "Delivered" or "Delivery",** unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 11, regardless of the method used (i.e., messenger, mail, email, fax, other).
**J. "Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.
**K. "Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
**L. "Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
**M. "Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.
**40. AUTHORITY:** Any person or persons signing this Agreement represent(s) that such person has full power and authority to bind that person's principal, and that the designated Buyer and Seller has full authority to enter into and perform this Agreement. Entering into this Agreement, and the completion of the obligations pursuant to this contract, does not violate any Articles of Incorporation, Articles of Organization, By Laws, Operating Agreement, Partnership Agreement or other document governing the activity of either Buyer or Seller.
**41. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____ *Wendy Hooper* _____ , who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by ☐ _____ ☐ AM/ ☐ PM, on _____ (date).

☐ One or more Buyers is signing the Agreement in a representative capacity and not for him/herself as an individual.  See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD) for additional terms.

Date  3/11/2015     BUYER  *Moses Said* _____
                                        ⌐335158623C2A4EA...
**(Print name)** *Fortis Property Investment Group, LLC* _____

Date _____     BUYER _____

**(Print name)** _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

**42. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ (If checked) SELLER'S ACCEPTANCE IS **SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form CO or SMCO) DATED:**
_____ .

☐ One or more Sellers is signing the Agreement in a representative capacity and not for him/herself as an individual.  See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD) for additional terms.
Date  3/11/2015     SELLER  *John Fitzgerald on behalf of Rabobank N.A.* _____
                                          ⌐6AAD0AE4D410424...
**(Print name)**   JOHN FITZGERALD _____

Date _____     SELLER _____

**(Print name)** _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( _____ / _____ )  **(Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
(Initials)          personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
                    ☐ AM/ ☐ PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.**

**CPA REVISED 11/14 (PAGE 10 OF 11)**

**COMMERCIAL PROPERTY PURCHASE AGREEMENT  (CPA PAGE 10 OF 11)**

DocuSign Envelope ID: 1768DE6A-EA2B-4D2D-8EBC-66CC8B5DCA51

Case 8:16-ap-01129-CB   Doc 1   Filed 05/08/16   Entered 05/08/16 22:24:07   Desc
Property Address: **2100 S Blosser Rd, Santa Maria, Document** 92458      Page 45 of 54      Date: **March 11, 2015**

**REAL ESTATE BROKERS:**
**A.** **Real Estate Brokers are not parties to the Agreement between Buyer and Seller.**
**B.** **Agency relationships are confirmed as stated in paragraph 2.**
**C.** If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
**D.** **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (**Selling Firm**) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) **Keller Williams Newport Estates** _____ CalBRE Lic. # **01883537** _____
By _*Wendy Hooper*_ (DocuSigned by: Wendy Hooper) **Wendy Hooper** CalBRE Lic. # **01449478** ___ Date **03/11/2015** _____
By ___059D417B7B234B3... _____ CalBRE Lic. # _____ Date _____
Address **800 Newport Center Dr #150** _____ City **Newport Beach** ___ State **CA** Zip **92660**
Telephone **(949)870-2424** _____ Fax _____ E-mail **wendy@CoastalVillageRealEstate.com** ___
Real Estate Broker (Listing Firm) **Rabobank N.A.** _____ CalBRE Lic. # _____
By _____ CalBRE Lic. # _____ Date _____
By _____ CalBRE Lic. # _____ Date _____
Address **915 Highland Pointe Dr** _____ City **Roseville** _____ State **CA** Zip **95678**
Telephone _____ Fax _____ E-mail _____

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____ ☐ Seller's Statement of Information and _____
_____ , and agrees to act as Escrow Holder subject to paragraph 24 of this Agreement, any
supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Bureau of Real Estate.

**PRESENTATION OF OFFER:** (_____) Listing Broker presented this offer to Seller on _____ (date).
   Broker or Designee Initials

**REJECTION OF OFFER:** (_____)(_____) No counter offer is being made. This offer was rejected by Seller on _____ (date).
   Seller's Initials

Buyer's Initials ( **MS** (DS) ) ( _____ )      Seller's Initials ( **JF** (DS) ) ( _____ )

©2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____
Broker or Designee _____



**CPA REVISED 11/14 (PAGE 11 OF 11)**

**COMMERCIAL PROPERTY PURCHASE AGREEMENT  (CPA PAGE 11 OF 11)**

# BUYER'S INSPECTION ADVISORY
### (C.A.R. Form BIA, Revised 11/14)

Property Address: **2100 S Blosser Rd, Santa Maria,  93458** _____ ("Property").

**1.  IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**2.  BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

**3.  YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

  **A.  GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and nonstructural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

  **B.  SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

  **C.  WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

  **D.  SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

  **E.  WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS;WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

  **F.  ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

  **G.  EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

  **H.  FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

  **I.  BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size.

  **J.  RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

  **K.  SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

  **L.  NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.**

Buyer _Moses Said_ _____    Buyer _____
          _Fortis Property Investment Group, LLC_

© 1991-2004, California Association of REALTORS®, Inc. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ Date _____ |

**BIA REVISED 11/14 (PAGE 1 OF 1)**

## BUYER'S INSPECTION ADVISORY (BIA PAGE 1 OF 1)



**CALIFORNIA ASSOCIATION OF REALTORS®**

## REPRESENTATIVE CAPACITY SIGNATURE DISCLOSURE
**(C.A.R. Form RCSD, Revised 11/14)**

**This form is not an assignment. It should not be used to add new parties after a contract has been formed.**

This is a disclosure to the Residential Purchase Agreement, ☒ Other _CPA Commericial Property Agree_ ("Agreement"), dated _03/11/2015_ , for the property known as _2100 S Blosser Rd_ ("Property"), between _Fortis Property Investment Group, LLC_ ("Buyer") and _Rabobank N.A._ ("Seller").

1. ☐ **A. ESTATE:** (1) Seller is an ☐ estate, ☐ conservatorship, or ☐ guardianship identified by Superior Court Case name as _____ , Case # _____ .
   (2) The person(s) signing below is/are court approved representatives (whether designated as Sole or Co-Executor, Administrator, Conservator, Guardian) of the entity described in paragraph 1A1.
   ☐ **B. TRUST:** (1) The Property (☐ assets used to acquire/lease the Property) is held in trust pursuant to a trust document dated _____ , titled _____ .
   (2) The person(s) signing below is/are Sole/Co/Successor Trustee(s) of the Trust.
   ☐ **C. POWER OF ATTORNEY:** ☐ Seller ☐ Buyer ☐ Other: _____ ("Principal") has authorized the person(s) signing below ("Attorney-In-Fact", "Power of Attorney" or "POA") to act on his/her behalf pursuant to a General Power of Attorney (☐ Specific Power of Attorney for the Property), dated _____ . **This form is not a Power of Attorney. A Power of Attorney must have already been executed before this form is used.**
   ☒ **D. ENTITY:** ☐ Seller ☒ Buyer ☐ Other: _____ is a ☐ Corporation, ☒ Limited Liability Company, ☐ Partnership which has authorized the officer(s), managing member(s) or partner(s) signing below to act on its behalf. An authorizing resolution of the applicable body of the entity described above ☐ is ☐ is not attached.

2. The Party acting in a representative capacity: (i) represents that the entity for which that party is acting already exists.

**Representative:**
Entity Name (If POA, Sign Principal's Name) _Fortis Property Investment Group LLC_
By (Representative Signature ) _Moses Said_                 Print Title: _Managing Member_
(Print Representative Name) _Moses Said_                 Date: _3/11/2015_

Entity Name (If POA, Sign Principal's Name) _____
By (Representative Signature ) _____                 Print Title: _____
(Print Representative Name) _____                 Date: _____

**Acknowledged By:**
(Signature) _John Fitzgerald on behalf of Rabobank N.A._                 Date: _3/11/2015_
(Print Name) _JOHN FITZGERALD_    ☒ Seller ☐ Buyer ☐ Other: _____

(Signature) _____                 Date: _____
(Print Name) _____    ☐ Seller ☐ Buyer ☐ Other: _____

© 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

**RCSD REVISED 11/14 (PAGE 1 OF 1)**

## REPRESENTATIVE CAPACITY SIGNATURE DISCLOSURE (RCSD PAGE 1 OF 1)

## CALIFORNIA ASSOCIATION OF REALTORS®

### REO ADVISORY
**For Properties Being Sold by a Lender After Foreclosure**
(C.A.R. Form REO, Revised 4/11)

Property Address: _____ **2100 S Blosser Rd** _____ ("Property").
**Santa Maria,  93458**

The Seller of the Property is a lender who has acquired title to the Property either by foreclosure or through a deed given in lieu of foreclosure. Many obligations imposed upon sellers, particularly sellers of real property containing one-to-four dwelling units, may not be applicable to the sale of the Property. However, even though Seller is exempt from many obligations, Seller must still comply with many others. Further, even though a Seller may be exempt from many obligations, a real estate broker's obligations may still apply. This Advisory is intended to inform Buyer and Seller of their rights and obligations independent of those established by the contract between them.

### EXEMPTIONS:

1. **TDS, NHD, Mello-Roos, Improvement Bond Act, Supplemental Property Taxes, Private Transfer Fee:** Seller is <u>exempt</u> from providing Buyer with the Real Estate Transfer Disclosure Statement (TDS), Natural Hazard Disclosure Statement (NHD), a Mello-Roos district lien disclosure, an Improvement Bond Act of 1915 notice, a Supplemental Property Tax notice, and a Notice of Private Transfer Fee pursuant to California Civil Code §§ 1102 et seq.

2. **Earthquake Guides:** Seller is <u>exempt</u> from providing either a Homeowner's or Commercial Property Owner's Guide to Earthquake Safety.

### REQUIREMENTS:

1. **Disclosures:** Seller is <u>not exempt</u> from common law and statutory duties concerning fraud and deceit, even though the specific TDS Form is not required to be completed. Seller remains obligated to disclose known material facts affecting the value and desirability of the Property.

2. **Hazard Zones:** Seller is <u>not exempt</u> from applicable statutory obligations to disclose earthquake fault zones, seismic hazard zones, state fire responsibility areas, very high fire hazard severity zones, special flood hazard areas and flood hazard zones pursuant to the Public Resources Code, Government Code and United States Code, even though, pursuant to the Civil Code, the specific NHD Form is not required to be completed.

3. **Smoke Detectors:** The sale is <u>not exempt</u> from the State requirements that, for <u>single family residences</u>, operable smoke detectors be in place and that a written statement of compliance be provided to Buyer. It is negotiable between Buyer and Seller who is to pay for the cost of compliance.

4. **Water Heaters:** The sale is <u>not exempt</u> from the State requirement that water heaters be properly anchored, braced or strapped and that Seller provide a written statement of compliance to Buyer. It is negotiable between Buyer and Seller who is to pay for the cost of compliance.

5. **Lead-based Paint:** The Seller is <u>not exempt</u> from the federal obligation to: **(i)** disclose known lead-based paint and lead-based paint hazards; **(ii)** provide Buyer with copies of reports or studies covering lead-based paint and hazards on the Property; **(iii)** provide Buyer with the pamphlet "Protect Your Family From Lead In Your Home"; and **(iv)** give Buyer a 10-day opportunity to inspect for lead-based paint and hazards, if the Property contains residential dwelling units and was constructed prior to 1978.

6. **Carbon Monoxide Devices:** The sale is <u>not exempt</u> from the State requirements that on or before July 1, 2011, for all existing single family dwelling units, and on or before January 1, 2013, for all other existing dwelling units, the owner must install a carbon monoxide device approved and listed by the State Fire Marshall in the dwelling unit if the dwelling unit has a fossil fuel burning heater or appliance, fireplace, or an attached garage.

7. **Tax Withholding:** The sale is <u>not exempt</u> from providing information pertaining to the withholding obligation under either the federal "FIRPTA" or the California withholding requirements upon the sale of real property. However, an REO Seller which is a corporation or limited liability company, formed within the United States, and qualified either with the Secretary of State to do business in California or with a permanent place of business in California, will be exempt from withholding under both federal and California law.

Buyer's Initials (__MS__) (_____)    Seller's Initials (__JF__) (_____)

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 2008-2011, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Reviewed by _____ Date _____

**EQUAL HOUSING OPPORTUNITY**

**REO REVISED 4/11 (PAGE 1 OF 2)**

### REO ADVISORY (REO PAGE 1 OF 2)

DocuSign Envelope ID: 1768DE6A-EA2B-4D2D-8EBC-66CC8B5DCA51

Case 8:16-ap-01129-CB    Doc 1    Filed 05/08/16    Entered 05/08/16 22:24:07    Desc
Property Address: 2100 S Blosser Rd, Santa Maria, Document    Page 49 of 54    Date: March 11, 2015

**8. Megan's Law Database Disclosure:** The sale is not exempt from the requirement that residential sales contracts contain the following notice regarding the availability of information about registered sex offenders. "Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides." (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

**9. Brokers:**
    **A.** Inspection: The sale is not exempt from the Broker's obligation to conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose to Buyer material facts revealed by such an inspection in the sale of residential property containing one-to-four dwelling units. Brokers may do so on C.A.R. Form AVID.
    **B.** Agency: The sale is not exempt from the obligation to provide agency relationship disclosure and confirmation forms in the sale of residential property containing one-to-four dwelling units.

**OTHER CONSIDERATIONS:**

**1. Selection of Title and Escrow:** Calforina Civil Code section 1103.22 prohibits Seller from requiring, directly or indirectly, a Buyer to purchase title insurance or escrow services from a particular title insurer or escrow agent in connection with the sale of residential property improved with four or fewer dwellings. The Buyer may agree to use the title or escrow provider recommended by Seller if the Buyer has been informed of the right to make an independent selection of the applicable service. This law is in effect until January 1, 2015. Federal law, 12 U.S.C. Section 2608, prohibits Seller from requiring, directly or indirectly, that the Buyer purchase title insurance from any particular title company as a condition of selling residential property improved with four or fewer dwellings if the purchase will be made with a federally-related mortgage loan. Seller and Buyer understand that Brokers do not require Buyer to purchase title or escrow services from any particular provider. Any communications from Seller that Broker may deliver to Buyer or Buyer's agent concerning the selection of title or escrow services should not be construed as Broker's endorsement or recommendation of, or request for Buyer to use, any particular title or escrow provider.

**2. Local Law:** Local law may impose obligations on the transfer of real property (such as the installation of low flow toilets or shower heads, emergency gas shut-off valves or installation of smoke detectors). Local law should be consulted to determine if sales of Lender-owned property are exempt from such requirements.

**3. Amendments to Contract:** Seller-prepared addenda, amendments, or counter-offers or a Seller-prepared contract, may conflict with, contradict or be inconsistent with terms in Buyer's offer. Brokers cannot advise Buyer or Seller: **(i)** which specific terms in any offer may be affected; **(ii)** whether the terms in any such Seller-prepared documents are permissible under California Law; or **(iii)** in the event of a discrepancy between the Seller-prepared documents and any other Agreement between Buyer and Seller, which document or which terms may supersede the other. Buyer is advised to seek legal counsel to discuss the applicability and interpretation of any Seller-prepared documents prior to signing any such documents.

**4. Rental Property:** If the Property was occupied by a tenant at the time the lender acquired the Property and the tenant had a bona fide arm's length rental agreement at a fair market rate, the tenant may be entitled to the balance of their lease term, or at least a 90-day notice for termination of a month-to-month tenancy. In addition, certain rent control jurisdictions have asserted that the tenant has rights under rent control after a foreclosure. Moreover, the tenant may be entitled to the return of their security deposit even if the security deposit was not given to the lender after the foreclosure sale or to the buyer of the REO Property.

**By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this REO Advisory.**

| | | |
|---|---|---|
| Buyer _Moses Said_ | Date | _March 11, 2015_ |
| Fortis Property Investment Group, LLC | | |
| Buyer _____ | Date | _____ |
| Seller _John Fitzgerald on behalf of Rabobank N.A._ | Date | 3/11/2015 |
|     6AAD0AE4D410424... | | |
| Seller _____ | Date | _____ |

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
**R E B S**  REAL ESTATE BUSINESS SERVICES, INC.
_a subsidiary of the California Association of REALTORS®_
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ Date _____ |
|---|



Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          Fortis Group 2100

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

2549 East Bluff Drive; B-459, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled: Objection to Discharge of Debtor's Debt
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and
**(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
5/8/2016  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Trustee: Karen Naylor – acanzone@burd-naylor.com  knaylor@ecf.epiqsystems.com
United States Trustee – ustpregion16.sa.ecf@USDOJ.gov
Attorney for Creditor –   Kent@EEXCEL.com
Attorney for Debtor -    kaufman_kaufman.bankruptcy@yahoo.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date*) 5/8/2016        , I served the following persons and/or entities at
the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a
sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here
constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

X Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 8, 2016 | Kent Salveson | /S/ Kent Salveson |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

                                       **F 9021-1.2.BK.NOTICE.LODGMENT**

Label Matrix for local noticing
0973-8
Case 8:15-bk-15241-CB
Central District of California
Santa Ana
Fri Feb  5 15:37:30 PST 2016

BMW Financial Services NA, LLC Department
c/o Ascension Capital Group
P.O. Box 201347
Arlington, TX 76006-1347

Employment Development Dept.
Bankruptcy Group MIC 92E
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Franchise Tax Board
Bankruptcy Section MS: A-340
P.O. Box 2952
Sacramento, CA 95812-2952

Recovery Management Systems Corporation
25 SE 2nd Avenue, Suite 1120
Miami, FL 33131-1605

United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4500

Santa Ana Division
411 West Fourth Street, Suite 2030,
Santa Ana, CA 92701-4500

ARSI
55 St. Chanrles Dr., 3100
Thousand Oaks, CA 91360-3976

American Express Centurion Bank
Suite 0002
Chicago, IL 60679

American Express Centurion Bank
c/o Raymond J. Lee, Esq.
Zwicker & Associates, P.C.
199 S. Los Robles Ave., Ste 410
Pasadena, CA 91101-2438

American Express Platinum Bank
P.O.Box 0001
Los Angeles, CA 90096-0001

(p)BMW FINANCIAL SERVICES
CUSTOMER SERVICE CENTER
PO BOX 3608
DUBLIN OH 43016-0306

Bank of America American Express
P.O.BOX 982235
El Paso, TX 79998-2235

Bank of America Visa
Business Account
P.O.Box 15284
Wilmington, DE 19850-5284

(p)BANK OF AMERICA
PO BOX 982238
EL PASO TX 79998-2238

Barclays
Card Services
Lock Box 60517
City of Industry, CA 91716-0517

Capital One
P.O.BOX 71083
Charlotte, NC 28272-1083

Cash Central
P.O.Box 6430
North Logan, UT 84341-6430

Dr. Charbel Maksoud
c/o Kent Salveson, Esq.
2549 East Bluff Dr., B#459
Newport Beach, CA 92660

Ghada Afifi
10 Sable Sands
Newport Coast, CA 92657-1907

HSBC Bank USA, NA
P.O.BOX 4657
Carol Stream, IL 60197-4657

JP Morgan Chase Bank
P.O. Box 901033
Fort Worth, TX 76101-2033

Law Office of Sara J. Hamilton
30 Corporate Park, Suite 211
Irvine, CA 92606-3106

Loan Me
1900 South State College Blvd.
Suite 300
Anaheim, CA 92806-6152

(p)MERCEDES BENZ FINANCIAL SERVICES
13650 HERITAGE PARKWAY
FORT WORTH TX 76177-5323

Radley Finalcial Services
5301 Cabot Rd., #111
Laguna Hills, CA 92653

Recovery Management Systems Corporation
25 S.E. 2nd Avenue, Suite 1120
Miami, FL 33131-1605

TLD FINANCIAL SERVICES
7322 SouthWest Freeway Ste 1600
Houston, TX 77074-2134

(p)US BANK
PO BOX 5229
CINCINNATI OH 45201-5229

Wells Fargo
P.O.Box 30427
Los Angeles, CA 90030-0427

Wells Fargo Business Credit Card
Business Direct Division
MAC S4101-050
Phoenix, AZ 85038-8650

Karen S Naylor (TR)
P.O. Box 504
Santa Ana, CA 92702-0504

Leslie K Kaufman
1001 N Ross St
Santa Ana, CA 92701-3315

Moses Seedorf Said
11 Sarteano Drive
Newport Coast, CA 92657-1627

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
s in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

BMW Financial Services
P.O. Box 78103
Phoenix, AZ 85062

Bank of America Visa
P.O.Box 982238
El Paso, TX 79998

Mercedes Benz Financial Services
P.O.Box 5209
Carol Stream, IL 60197

U.S. Bank
P.O.Box 790179
Saint Louis, MO 63179-0179

Abbey Said
11 Sarteano
Newport Beach, CA
92660

Charles Lee Williams
3840 Redstone Court SE
Smyrna, GA 30080

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Courtesy NEF

End of Label Matrix
Mailable recipients      33
Bypassed recipients       1
Total                    34

Label Matrix for local noticing
0973-8
Case 8:15-bk-15241-CB
Central District of California
Santa Ana
Sun May  8 21:56:54 PDT 2016

AMERICAN EXPRESS CENTURION BANK
C/O BECKET & LEE
16 General Warren Boulevard
PO Box 3001
MALVERN, PA 19355-0701

BMW Financial Services NA, LLC Department
c/o Ascension Capital Group
P.O. Box 201347
Arlington, TX 76006-1347

Burd & Naylor
200 W. Santa Ana Blvd
Suite 400
Santa Ana, CA 92701-4134

Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Franchise Tax Board
Bankruptcy Section MS: A-340
P.O. Box 2952
Sacramento, CA 95812-2952

Recovery Management Systems Corporation
25 SE 2nd Avenue, Suite 1120
Miami, FL 33131-1605

United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4500

Santa Ana Division
411 West Fourth Street, Suite 2030,
Santa Ana, CA 92701-4500

AMERICAN EXPRESS CENTURION BANK
C/O BECKET AND LEE LLP
PO BOX 3001
MALVERN, PA 19355-0701

ARSI
55 St. Chanrles Dr., 3100
Thousand Oaks, CA 91360-3976

American Express Centurion Bank
Suite 0002
Chicago, IL 60679

American Express Centurion Bank
c/o Raymond J. Lee, Esq.
Zwicker & Associates, P.C.
199 S. Los Robles Ave., Ste 410
Pasadena, CA 91101-2438

American Express Platinum Bank
P.O.Box 0001
Los Angeles, CA 90096-0001

(p)BMW FINANCIAL SERVICES
CUSTOMER SERVICE CENTER
PO BOX 3608
DUBLIN OH 43016-0306

Bank of America American Express
P.O.BOX 982235
El Paso, TX 79998-2235

Bank of America Visa
Business Account
P.O.Box 15284
Wilmington, DE 19850-5284

(p)BANK OF AMERICA
PO BOX 982238
EL PASO TX 79998-2238

Barclays
Card Services
Lock Box 60517
City of Industry, CA 91716-0517

Capital One
P.O.BOX 71083
Charlotte, NC 28272-1083

Capital One Bank (USA), N.A.
PO Box 71083
Charlotte, NC  28272-1083

Cash Central
P.O.Box 6430
North Logan, UT 84341-6430

Dr. Charbel Maksoud
c/o Kent Salveson, Esq.
2549 East Bluff Dr., B#459
Newport Beach, CA 92660

Ghada Afifi
10 Sable Sands
Newport Coast, CA 92657-1907

HSBC Bank USA, NA
P.O.BOX 4657
Carol Stream, IL 60197-4657

JP Morgan Chase Bank
P.O. Box 901033
Fort Worth, TX 76101-2033

Law Office of Sara J. Hamilton
30 Corporate Park, Suite 211
Irvine, CA 92606-3106

Loan Me
1900 South State College Blvd.
Suite 300
Anaheim, CA 92806-6152

(p)MERCEDES BENZ FINANCIAL SERVICES
13650 HERITAGE PARKWAY
FORT WORTH TX 76177-5323

Radley Finalcial Services
5301 Cabot Rd., #111
Laguna Hills, CA 92653

Recovery Management Systems Corporation
25 S.E. 2nd Avenue, Suite 1120
Miami, FL 33131-1605

Richard Wilder
6162 N State Rd 7 Apt 101
Coconut Creek FL 33073-3651

TLD FINANCIAL SERVICES
7322 SouthWest Freeway Ste 1600
Houston, TX 77074-2134


(p)US BANK
PO BOX 5229
CINCINNATI OH 45201-5229

Wells Fargo
P.O.Box 30427
Los Angeles, CA 90030-0427

Wells Fargo Business Credit Card
Business Direct Divisison
MAC S4101-050
Phoenix, AZ 85038-8650


Charbel Maksoud
c/o Kent Salveson, Esq.
2549 East Bluff Drive
B-459
Newport Beach, CA 92660-3500

Karen S Naylor (TR)
P.O. Box 504
Santa Ana, CA 92702-0504

Moses Seedorf Said
PO Box 524168
Houston, TX 77052-4168


Paul S Nash
16148 Sand Canyon Ave
Irvine, CA 92618-3715


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


BMW Financial Services
P.O. Box 78103
Phoenix, AZ 85062

(d)BMW Financial Services NA, LLC
P.O. Box 3608
Dublin, OH 43016

Bank of America Visa
P.O.Box 982238
El Paso, TX 79998


Mercedes Benz Financial Services
P.O.Box 5209
Carol Stream, IL 60197

U.S. Bank
P.O.Box 790179
Saint Louis, MO 63179-0179


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Courtesy NEF

End of Label Matrix
Mailable recipients        39
Bypassed recipients         1
Total                      40